776 P.2d 1189

Maria **HARRISON**,
Claimant–Respondent,

v.

**OSCO DRUG, INC.,** Employer,
Defendant–Appellant.

No. 17213.

Supreme Court of Idaho.

June 30, 1989.

Brady, Saetrum, Tingey, Day & Joyce, Chartered, Boise, for defendant-appellant. Michael E. Powers argued.

P. Bruce Palmer, Idaho Falls, for claimant-respondent.

BISTLINE, Justice.

Harrison was employed as a cashier for Osco Drug in Idaho Falls. On July 23, 1985, she stepped on a piece of carbon paper from a charge card receipt and fell to the floor landing on her lower spine. The following day she sought treatment from Dr. Don Heaton. His diagnosis was acute lumbosacral sprain. Harrison was unable to work due to pain and continued to see Dr. Heaton for treatment. His recommendations included physical therapy and mild manipulations combined with bed rest. Dr. Heaton referred Harrison to Dr. Larry VanGenderen, an Idaho Falls orthopedic surgeon, for further diagnosis. He diagnosed a herniated disk and recommended possible surgery.

Harrison wished to avoid surgery and returned to Dr. Heaton for treatment. When Dr. Heaton's further treatment failed to provide relief, he referred her to Dr. Chester Powell, a Salt Lake City, Utah, neurosurgeon. Dr. Powell reviewed her medical files and conducted his own examination. He noted a slight bulging of Harrison's disk in the lower back but felt her symptoms were disproportionate to the clinical, organic findings. In particular he noted an abnormal symptomology associated with Harrison's left leg and foot which he characterized as "foot drop." Dr. Powell expressed the opinion that there may be

a significant element of conversion hysteria or conversion reaction associated with Harrison's foot drop. Dr. Powell stated in his report that Mrs. Harrison continued to be severely symptomatic to the point of disability and further stated that he recommended referral of Harrison to a pain clinic as the best source of treatment.

The pain clinic referral was not made at that time, and Harrison continued with physical therapy and medication. On March 19, 1986, Harrison was referred by Osco to a Boise medical panel, consisting of Drs. Thomas Henson, Keith Taylor, and Eric Holt. The panel recommended physical therapy and psychiatric counseling. Thereafter, Harrison began psychiatric counsel with Dr. John Casper of Idaho Falls.

Harrison was again seen by Dr. Powell in a follow up examination on July 8, 1986. At that time, Dr. Powell noted continued inversion of her left foot. Dr. Powell recommended that Harrison be referred to a neurologic center for comprehensive reassessment. Dr. Powell felt that Harrison continued to be totally disabled from returning to her job because of her continuing symptomology.

Pursuant to Dr. Powell's recommendation, Harrison was examined on October 24, 1986, by Dr. James Burns of the University of Utah Department of Neurology. Drs. Burns and Petajan, his associate, conducted a magnetic resonance imaging test. The MRI showed L4–5 disk bulge and degeneration with premature termination of the thecal sac L5–S1.

Dr. Burns evaluated Harrison again on January 22, 1987. He felt that aggressive in-patient treatment in conjunction with therapy modalities recommended by Dr. Petajan, would be the preferred treatment course. Among other measures, Dr. Petajan suggested biofeedback therapy, posthypnotic suggestion, and the use of a "boot" to force Harrison's foot into a normal position. These doctors recommended the treatment take place at the University of Utah Medical Center as soon as possible to maximize the chances of correcting claimant's problems.

As of May 14, 1987, Dr. Burns still wanted Harrison to undergo the treatment he and Dr. Petajan had recommended for her. However, without the approval of Osco, Harrison could not undertake this treatment, and thus it was not obtained for her as of that time. The Industrial Commission found that there was no definite physical cause for Harrison's continuing problems with her left leg. However, the Commission noted that Harrison has no voluntary control over this problem, and that all physicians who examined her agreed that she is not a malingerer. Without treatment, the Commission found, her condition will persist and could cause physical deterioration. After reviewing all the testimony of all the various physicians involved, the Commission found that Harrison's left leg problems were caused by a conversion reaction which resulted from her industrial accident and injury sustained on June 23, 1985. Thus, the Commission found that Harrison was entitled to worker's compensation benefits related to her conversion reaction since it was related to an industrial accident.

The Commission awarded Harrison all her medical expenses related to diagnosis and treatment of her left leg problem. The Commission also ordered employer-surety to fund future treatment of her conversion reaction whether the treatment takes the form of mental health counseling, pain clinic work, physical therapy, or any other modality suggested by Drs. Powell, Burns, or Casper. The Commission also required Osco to compensate Harrison for all of Dr. Heaton's bills related to her low back sprain.

The Commission, however, did not award Harrison compensation for gynecological problems which she believed resulted from her industrial accident. Harrison believes her fall dislodged an Inter-uterine Device (IUD) and may have torn her uterine wall. Reviewing somewhat conflicting testimony, the Commission found that Harrison's gynecological problems were not causally related to her industrial accident and therefore her gynecological medical expenses were not compensable.

The Commission concluded that Harrison was totally temporarily disabled. As a result Harrison was awarded total temporary disability (TTD) benefits which are to continue until her condition has stabilized and/or an impairment rating is assigned, at which point total temporary disability would end. The Commission also concluded that a determination of permanent partial disability was not appropriate at the time of its order and held the issue in abeyance. The Commission did the same with regard to Harrison's request for retraining benefits. Finally, the Commission disallowed Harrison's claim for attorney fees at the hearing level because it concluded that Osco did not unreasonably deny Harrison's claim since genuine disputes over causation existed.

■ Osco's appeal requires us to consider whether the Industrial Commission properly determined that Harrison is entitled to worker's compensation benefits, including total temporary disability benefits and medical expenses, because her low back injury and resulting conversion reaction were caused by an industrial accident. In addition, Harrison seeks attorney fees on appeal.

The degree and cause of the claimant's disability are largely questions of fact. *Bruce v. Clear Springs Trout Farm*, 109 Idaho 311, 312, 707 P.2d 422, 423 (1985). The standard of review is that the Commission's factual determinations will be affirmed when they are supported by substantial competent evidence. Idaho Const. Art. 5, § 9.

Osco disputes that Harrison is still within the period of recovery required by I.C. § 72–408,[1] and therefore she is not entitled to compensation for continuing treatment. Osco also disputes whether Harrison's conversion reaction is causally related to her industrial accident. A review of the record demonstrates that substantial competent evidence supported the Commission's findings on both counts.

As detailed in the facts above, Harrison has consulted numerous physicians. The vast majority of them have recommended additional physical therapy and psychological counseling to correct physical problems that are associated with her conversion reaction. Both Drs. Burns and Petajan of the University of Utah Department of Neurology, to whom Harrison was referred by Dr. Powell, recommended hospitalization and aggressive treatment to correct Harrison's inverted left foot, including psychological counseling. Even the Boise panel of physicians chosen by Osco determined that Harrison had a continuing need for psychiatric treatment due to her conversion reaction.

In addition, Dr. Burns expressed his opinion that her problems with her inverted left foot were causally connected to her industrial accident:

Q. Is it your opinion that there is a cause and connection? . . .

A. If the accident was responsible for the pain in her back and leg, and that's possible, then she might have assumed that position because it was more comfortable and reduced the pain she was having. I don't know how better to state that.

Q. Well, can you put it into a form of probability? That is, more probable or less probable than not? . . .

A. Taking what Mrs. Harrison says as true, if she had continuous pain from the time she fell until the time she began to walk in this particular position, then I would have to have to say that it is probable that her walking in that position was related to the fall.

Burns Deposition, 30–31. Psychiatric testimony was to the same effect. Dr. Casper stated that he felt that there was a relationship between the reported injury and her hysterical conversion reaction. Casper Deposition, Exhibit No. 1. Dr. Casper stated that he felt that Harrison was in continuing need of psychotherapy because of

1. **Income benefits for total and partial disability.**—Income benefits for total and partial disability during the period of recovery, and thereafter in cases of total and permanent disability, shall be paid to the disabled employee. . . .

her underlying hysterical condition. *Id.* at 48.

Osco complains mainly that the Commission did not rely on particular testimony of certain medical experts whose testimony supported a view contrary to that expressed above. However, the Industrial Commission is not bound to accept the opinion of any particular doctor that a patient's condition is within the period of recovery and not stable and rateable. *Paulson v. Idaho Forest Industries, Inc.,* 99 Idaho 896, 901, 591 P.2d 143, 148 (1979).

Our prior cases have established that psychological disorders should be compensated if they are proximately caused by an industrial accident and if they result in loss of earning capacity; the physical symptoms indirectly caused by psychological illness may come within the definition of permanent impairment. *Hartley v. Miller Stephan,* 107 Idaho 688, 690, 692 P.2d 332, 334 (1984). For a good review of earlier conversion reaction cases, *see Mapusaga v. Red Lion Riverside, Inn,* 113 Idaho 842, 849–50, 748 P.2d 1372, 1379–80 (1987).

At best, Osco points only to a conflict among the medical testimony. However, this is not sufficient to defeat the substantial evidence standard of review our constitution mandates that this Court follow when reviewing the findings of the Industrial Commission. Therefore, we affirm the Commission.

Harrison also seeks attorney fees on appeal. Idaho Code § 72–804 [2] provides that a claimant may recover attorney fees before any court if the employer or surety

neglected or refused within a reasonable time to pay to the injured employee compensation provided by law. Here, in addition to total temporary disability benefits provided by I.C. § 72–408, Harrison seeks compensation for and provision of medical services pursuant to I.C. § 72–432(1).[3] This Court has determined that the language of I.C. § 72–432 is *mandatory.* It requires the employer to provide his injured employee medical care as needed within a reasonable time after an occupational injury. *Paulson v. Idaho Forest Industries, Inc.,* 99 Idaho at 902, 591 P.2d at 149. We determine that Osco has unreasonably contested Harrison's claim for compensation which was established by the Industrial Commission based upon solid testimony of medical experts. Therefore, we grant Harrison's request for attorney fees on appeal.

We affirm the Industrial Commission's order and remand this case for attorney fees on appeal to be fixed by the Industrial Commission pursuant to I.C. § 72–804. Costs and attorney fees on appeal to Harrison.

BAKES, C.J., and HUNTLEY and JOHNSON, JJ. concur.

SHEPARD, J., sat but did not participate due to his untimely death.

---

2. **Attorney's fees—Punitive costs in certain cases.** If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee *without reasonable ground,* or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the

compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

3. **Medical services, appliances and supplies—Reports.**—(1) The employer *shall provide* for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be required by the employee's physician or needed immediately after an injury or disability from an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employees may do so at the expense of the employer. (Emphasis added.)