29 P.3d 390

**Barbara GOOBY, Claimant–Appellant,**

**v.**

**LAKE SHORE MANAGEMENT CO., Employer, and State Insurance Fund, Surety, Defendants–Respondents.**

No. 26332.

Supreme Court of Idaho,
Moscow, April 2001 Term.

June 27, 2001.

Rehearing Denied Aug. 9, 2001.

John T. Mitchell, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Attorney General, Boise; Jay P. Gaskill, Special Deputy Attorney General, Lewiston, for respondents. Jay P. Gaskill argued.

EISMANN, Justice.

Barbara Gooby (Gooby) appeals from an order of the Industrial Commission holding that she failed to prove that she is totally and permanently disabled. We affirm the findings of the Industrial Commission regarding

Gooby's disability rating, we vacate the Commission's denial of attorney fees, and we remand the issue of attorney fees to the Commission.

## I.

### FACTS AND PROCEDURAL HISTORY

In 1988 or 1989, Gooby began working in Sandpoint, Idaho, as a buyer and manager at "The Company Store" owned by Lake Shore Management. Her duties included buying and pricing merchandise; unpacking boxes of merchandise and displaying it in the store; hiring, training, supervising, scheduling, and firing employees; and waiting on customers. On November 21, 1996, Gooby slipped on a patch of ice on the sidewalk at work and fell backwards, striking her head on the concrete sidewalk. She immediately felt sick to her stomach and had a headache, so she went home. The next morning she developed tenderness and stiffness extending from her neck to her tailbone, and the following day she sought medical care. The physician diagnosed her injuries as a concussion and back sprain. Two weeks later she visited her family physician, and he diagnosed her injury as a cervical strain. According to Gooby, over the next two years her pain continued to increase to the point that she was unable to perform her work duties on a regular basis. In addition, she contended that the pain caused other problems including fecal incontinence, depression, anxiety, insomnia, and inability to concentrate. She testified that she went into work only on the days that the pain was not too intense, which eventually became one to two days a week. Gooby's employment terminated on April 1, 1999, when her employer went out of business. She has not worked since. Dr. Coffin, Gooby's primary treating physician, also testified that Gooby's extremely large breasts put great pressure on her shoulders and neck and that breast reduction surgery could eliminate or significantly reduce her pain.

Gooby filed a worker's compensation complaint which was heard on August 6, 1999. After the hearing, the referee issued findings of fact and conclusions of law, which were adopted by the Commission. The findings included that Gooby was medically stable as of July 29, 1998; that she suffered a permanent partial disability of 10% of the whole person, and that she had failed to prove that she was totally and permanently disabled under the odd-lot doctrine.

Gooby filed a motion for reconsideration asking the Commission to reconsider the finding that Gooby had failed to prove a prima facie case under the odd-lot doctrine by proving a failed work attempt. The Commission denied the motion for reconsideration, and Gooby appealed.

## II.

### STANDARD OF REVIEW

When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.* Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact. *Id.*

## III.

### ISSUES ON APPEAL

A. Did the Industrial Commission err in failing to specifically address whether the claimant had proven a failed work attempt under the odd-lot doctrine?

B. Are the Industrial Commission's findings of fact supported by substantial and competent evidence?

C. Was the claimant entitled to an award of attorney fees?

## IV.

## ANALYSIS

**A. Did the Industrial Commission err in failing to specifically address whether the claimant had proven a failed work attempt under the odd-lot doctrine?**

The Industrial Commission adopted the referee's findings of fact and conclusions of law and found that Gooby had failed to prove that she was totally and permanently disabled under the odd-lot doctrine. Gooby then filed a motion for reconsideration, contending that the Commission had failed to address whether Gooby had proven a failed work attempt as a means of establishing a prima facie case of total and permanent disability under the odd-lot doctrine. The Commission denied the motion for reconsideration without specifically addressing the issue of failed work attempt.

 Claimants may prove that they are totally and permanently disabled by demonstrating that they fit within the definition of an odd-lot worker. *Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 565 P.2d 1360 (1977). The odd-lot category is for those workers who are so injured that they can perform no services other than those that are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. *Id.* Such workers need not be physically unable to perform any work at all. *Id.* They are simply not regularly employable in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part. *Id.* If the evidence of the medical and nonmedical factors places a claimant prima facie in the odd-lot category, the burden is then on the employer or surety to show that some kind of suitable work is regularly and continuously available to the claimant. *Id.*

 A prima facie case for odd-lot status is made when a claimant shows: (1) that he or she had attempted other types of employ-

ment without success; or (2) that he or she, or vocational counselors or employment agencies on his or her behalf, have searched for other work and other work is not available; or (3) that any efforts to find suitable employment would be futile. *Dehlbom v. Industrial Special Indem. Fund,* 129 Idaho 579, 930 P.2d 1021 (1997).

 In her post-hearing brief, Gooby claimed that the evidence established a prima facie case for odd-lot status under alternatives (1) and (3). The referee found that Gooby had failed to prove that any efforts to find suitable employment would be futile, but the referee did not address whether Gooby had shown a failed work attempt. After the Industrial Commission adopted the referee's findings of fact and conclusions of law and issued its order that Gooby was not totally and permanently disabled, she filed a motion for reconsideration in which she argued that the referee had erred by failing to address the issue of failed work attempt. When denying the motion for reconsideration, the Commission likewise did not specifically address this issue. Gooby contends that the Commission's failure to do so constitutes error. Although the Commission refused to specifically address the issue of whether Gooby had established a failed work attempt, there is no basis for vacating the Commission's order because Gooby did not offer any evidence showing a failed work attempt.

 Gooby argued that she had shown a failed work attempt because she was unable to perform the same job she was doing at the time of her injury. In her post-hearing brief, Gooby argued as follows:

Barbara Gooby contends that her sporadic employment in 1998 and 1999 constitute a *prima facie* case of odd-lot status by the first method [showing what other types of employment she has attempted]. She does not argue that she or others searched for employment, although she did follow up with an employment application at Coldwater Creek at Tom Moreland' [sic] request.[1]

In the brief supporting her motion for reconsideration, Gooby made the same argument.

---

1. Gooby did not testify that she actually applied for a job at Coldwater Creek. Her testimony regarding this matter was as follows:

Q. Since April, have you looked for any work?

*First,* the referee ignored the fact that claimant Barbara Gooby proved her prima facie case of odd lot disability by the first method under *Huerta v. School Dist. No. 431,* 116 Idaho 43, 48–49, 773 P.2d 1130, 1135–36 (1989), a failed work attempt. Barbara Gooby proved that ever since the industrial accident she has missed progressively more days at work as a result of the injuries she sustained from that accident, culminating in the last year only working one or two days per week. This is a failed work attempt.

A claimant cannot establish a failed work attempt merely by showing that he or she is unable to perform his or her previous type of employment.

In *Gordon v. West,* 103 Idaho 100, 645 P.2d 334 (1982), the claimant, a 57–year–old truck driver, was injured in an industrial accident. He testified that as a result, he had continuing pain in his neck, left shoulder, and between his shoulder blades, he could not lift heavy objects above his waist, and his arms became numb while driving. The Industrial Commission found that the claimant's disability rating amounted to 15% of the whole man, and the claimant appealed, contending that he had established a prima facie case under the odd-lot doctrine by his testimony that he had attempted to work as a truck driver several times after the accident, but his neck pain and the numbness in his arms kept him from doing so. In holding that such evidence was not sufficient to prove a prima facie case under the odd-lot doctrine, this Court stated as follows:

> A claimant must do more than assert that he cannot perform his previous type of employment in order to qualify as an "odd lot" worker. As in the *Lyons* case, he must show what other types of employment he has attempted. The commission, as the factfinder, must consider whether the claimant has tried and could not perform *other* work. In the absence of such a showing, claimant failed to establish that there was no suitable occupation available to him. *Id.* at 104–05, 645 P.2d at 338–39; (Emphasis in original).

The holding in *Gordon v. West* has been followed in subsequent cases. *Huerta v. School Dist. # 431,* 116 Idaho 43, 773 P.2d 1130 (1989) (where claimant had done nothing to seek employment other than to apply for re-employment with the employer for whom he was working at the time of his industrial accident, the claimant failed to show that he had attempted other work that he was capable of performing); *Nelson v. David L. Hill Logging,* 124 Idaho 855, 865 P.2d 946 (1993) (where claimant had made four unsuccessful attempts to return to work that involved heavy use of his injured leg, he did not establish a failed work attempt); *Dehlbom v. Industrial Special Indem. Fund,* 129 Idaho 579, 930 P.2d 1021 (1997) (where, after knee injury while employed as a welder, claimant only attempted to perform the same type of work which involved heavy use of his injured leg, he failed to establish a failed work attempt); *Boley v. Industrial Special Indemnity Fund,* 130 Idaho 278, 939 P.2d 854 (1997) (where claimant did not attempt to obtain either another position with his employer or employment with some other employer, he failed to establish a failed work attempt).

Because Gooby did not offer evidence showing that she unsuccessfully attempted to perform some other type of employment, she failed to establish that she had attempted other types of employment without success. Under this manner of establishing a prima facie case under the odd-lot doctrine, it is not sufficient merely to show that she was unable to continue performing the job she had at the time of her injury. Therefore, there is no reason to vacate the Commission's order in order to remand this case for a specific finding on this issue.

**B. Are the Industrial Commission's findings of fact supported by substantial and competent evidence?**

**1. Did the Commission err in considering the report of Dr. Keith Mackenzie?**

On July 29, 1998, G. Keith Mackenzie, M.D., examined Gooby at the request of the

---

A. No. You gave me something that that Tom man—I'm sorry, Tom Moreland said that there might be a job at Coldwater Creek or something to call, and I think you know I

called and set up an appointment, but they're not taking appointments. They sent me an application. I would have to be honest with those people.

surety. He found no objective evidence to support any claim of pain or problems with her neck and back, and he found nothing from a physical standpoint that would prevent her from working on a daily basis. Although he opined that she would have some days of absence, he believed she would continue to do her job over the years, but she should have a job that would allow her to change her position as needed. Dr. Mackenzie did not place any lifting restrictions on Gooby, but he opined that most of her lifting activities would be light and that she would rarely lift items that weighed more than twenty pounds.

It was apparent that the Commission placed great weight upon Dr. Mackenzie's opinions. Dr. Mackenzie did not testify during the hearing. He submitted a written report that was admitted into evidence at the hearing without objection. When expressing his opinions in that report, he did not use the words "reasonable degree of medical probability." Gooby contends that the Commission erred in relying upon Dr. Mackenzie's opinions because he did not expressly state that they were given "to a reasonable degree of medical probability."

The proper standard for the admission of an opinion held by a medical expert is that the opinion is held to a "reasonable degree of medical probability." *Bloching v. Albertson's, Inc.*, 129 Idaho 844, 934 P.2d 17 (1997); *Bowman v. Twin Falls Constr. Co., Inc.*, 99 Idaho 312, 581 P.2d 770 (1978). Whether or not the Commission can rely upon a medical opinion, however, does not depend upon the exact language used by the expert in expressing that opinion. *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 591 P.2d 143 (1979). Even though the medical expert does not use the words "reasonable degree of medical probability," the Commission can rely upon the expert's opinion if it is clear from the context that the expert was expressing an opinion based upon medical probability rather than merely upon medical possibility, speculation, or conjecture. *Jensen v. City of Pocatello*, 135 Idaho 406, 18 P.3d 211 (2000). From reading Dr. Mackenzie's report, it is clear that when ex-

pressing his opinions regarding Gooby's diagnosis and prognosis, he was expressing opinions that he believed were more probably true than not true. There is nothing in the report to indicate that he was merely speculating, conjecturing, or expressing mere possibilities.

Gooby also argues that the Commission should not have relied upon Dr. Mackenzie's report because he examined Gooby on July 29, 1998, over one year before the hearing, and during that one-year period Gooby's treating physician Dr. Coffin stated that Gooby was making progress. Gooby therefore argues that Dr. Coffin's testimony shows that Gooby was not medically stable at the time of the hearing and that Gooby's improvement during the year following Dr. Mackenzie's examination showed that his opinion should not be given much weight.

Dr. Mackenzie's opinion was that Gooby would not make significant improvement in the future. In his report, he stated, "Prognosis is that I do not anticipate the patient's reported symptomatology is going to change significantly over future years." He further stated, "At this time, I do not feel that further medical treatment is likely to produce any curative lasting benefit. She will need some ongoing pain management support in terms of medications, but these medications will be designed to help control her pain and will not provide a curative benefit."

Dr. Coffin began treating Gooby on October 9, 1997, and her deposition was taken on August 23, 1999. In her deposition, Dr. Coffin stated that she thinks Gooby will slowly improve. She expressed her opinion as follows:

Q And as I understand your testimony today, you feel that she can get better enough to work in time; is that correct?

A I'm hopeful that she can. I don't think that there's no chance. I'm always hopeful until proven completely wrong, and I feel a little bit at a disadvantage because I'm not going to see her through the end of that process. I think she's made enough headway to this point without really stepping up all the therapies as much as I would ideally like. I think it would be

great if she had somebody in Sandpoint who would take her swimming, teach her how to strengthen her upper body, really crank up her exercise program carefully and continue to see Dr. Vereen [a physician specializing in osteopathic manipulative medicine] and Greg Dudson [a chiropractor]. I think that would be ideal, but I don't think that's going to happen. So I think we work with what we've got, which is she's willing, she's trying, she's coming in as often as she's able and whenever she can get appointments with Dr. Vereen. And I think she'll improve just slowly.

. . .

Q And under "Client can work," it says, "Not at all until she improves." So I assume that goes back to your prognosis that you feel she will improve enough to work?

A My gut feeling is that she ought to be able to. I haven't found anything other than all the stuff we've talked about today that is keeping her from healing. There may be this collagen vascular disease, but people work with that.

Dr. Coffin testified that although Gooby's condition was unchanged from March 1998 through May 1999, she started to improve during the last couple months preceding Dr. Coffin's deposition.

Gooby was also examined on March 10, 1998, by a two-physician panel comprised of a neurosurgeon and an orthopedist/orthopedic surgeon. Their opinion was that as of the date of the examination, Gooby's condition was fixed and stable, she did not require any further treatment, and she was able to return to work without restrictions or limitations.

 As the factfinder, the Commission is free to determine the weight to be given to the testimony of physicians. *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000). The Commission is not bound to accept the opinion of the treating physician over that of a physician who merely examined the claimant for the pending litigation. *Poss v. Meeker Mach. Shop*, 109 Idaho 920, 712 P.2d 621 (1985). Absent evidence of abuse of discretion in weighing the evidence, and as long as the Commission's findings are

supported by substantial and competent evidence, the Supreme Court will not disturb the Commission's findings on appeal. *Kinney v. Tupperware Co.*, 117 Idaho 765, 792 P.2d 330 (1990).

**2. Did the Commission err in failing to consider the significant side effects from the medications Gooby was taking?**

 During the course of her treatment, Gooby took various medications, some of which caused significant side effects. When describing the various symptoms about which Gooby complained to her physicians, the Commission listed "side effects or minor adverse reactions to various medications prescribed for her." Gooby argues that the side effects she suffered from some medications were much more serious than "minor adverse reactions," that they are nonmedical factors that the Commission should have taken into consideration, and that if the Commission mischaracterized the severity of the side effects it did not properly take them into consideration.

During the hearing, Gooby testified that the medications she was currently taking were Cardizem and Adreninol for her heart and blood pressure; Relafen, an anti-inflammatory; Effexor, an antidepressant; and Hydrocordone, a pain medication. She testified that when she took the Effexor at a high dosage it made her vomit, but it did not cause side effects at the lower dosage she was now taking. The Relafen likewise did not cause her problems once she learned to take it all the time rather than only when she felt she needed it. At times, instead of Relafen she takes Ibuprofen, which she feels relieves pain faster than the Relafen, but she thinks the Ibuprofen causes stomach cramps. Finally, she stated that taking one Hydrocodone pill causes her to have a dry mouth and to become "a little sick to my stomach and a little bit dizzy and a little bit tired." If she takes two pills, she becomes sick to her stomach, but she learned that if she lays down and takes the pills with food, it seems to pass. She added that she does not drive when she takes Hydrocodone because "I

don't feel responsible at the wheel on pain pills," but that when she was working she only took the Hydrocodone when she came home after work. In addition, Gooby described the significant adverse side effects she experienced with other medications that her physicians had tried earlier. Although Gooby certainly experienced significant adverse side effects with some of the medications, her testimony showed that by changing medication and altering dosages she was able to keep the side effects to a manageable level where they would not interfere with her ability to work.

2. **Was there substantial and competent evidence supporting the Industrial Commission's finding that Gooby failed to prove that any efforts to find suitable employment would be futile?**

 The Commission found that Gooby had failed to show that a job search would have been futile. In connection with that ultimate finding, the Commission found that had Gooby's employer not gone out of business, she would likely still be employed. Its findings on this issue were as follows:

Claimant worked on a reduced schedule until the store finally closed in April 1999. She has not worked since. Neither she nor the vocational rehabilitation consultant conducted a thorough job search. A claimant may establish a prima facie case of being an odd-lot worker where he shows a job search would have been futile. However, Claimant has not shown such a search would be futile. She has marketable skills. But for the store's closure, she likely would be working for Employer yet. She has not proven she is totally disabled nor an odd-lot worker. (Citations omitted)

Gooby contends that the findings relating to her ability to work are not supported by substantial and competent evidence.

First, Gooby challenges the Commission's finding that but for the closure of the store where Gooby had been working, she would likely still be employed. She contends that the uncontradicted testimony of Gooby's employer was that the employer would not re-hire her. The testimony upon which Gooby relies is the following:

Q. How many businesses have you been involved with other than the ones that you've testified about? Any others?

A. Yes.

Q. How many others?

A. Oh, 20.

Q. Based on that experience, would you hire a new employee that had Barbara's physical problems?

A. It depended on what they would be required to do.

Q. Can you think of a position that you could put someone like Barbara Gooby in with her physical conditions?

A. If I still had all of my businesses, I would probably try because she's—of her talents. But if it involved the physical challenges of, for instance, the job that she had at Annie's or at The Company Store and Vintage Wheel Museum and being the buyer and the manager, I think it wouldn't be suitable. I wouldn't be able to hire her.

Gooby's prior employer did not testify that she would not hire someone in Gooby's physical condition. She testified that she would hire somebody in Gooby's physical condition if she still had all of her businesses, but she would not do so "if it involved the physical challenges of, for instance, the job that she had at Annie's or at The Company Store and Vintage Wheel Museum and being the buyer and the manager." The Commission could reasonably conclude from this testimony that if Gooby's former employer had a job available that did not involve those physical challenges, she would have kept Gooby on as an employee.

Gooby's former employer was also asked whether she ever had any position in the past where the employee did not have to come to work on a consistent basis, and she answered, "No." Gooby argues that the uncontradicted evidence is that her pain prevented her from working more than one or two days per week on an inconsistent basis and that therefore Gooby's former employer would not have hired Gooby for any job.

The evidence regarding Gooby's ability to work was conflicting. Dr. Mackenzie and the

two-physician panel were both of the opinion that Gooby was able to work on a daily basis, although Dr. Mackenzie stated that she would have some days of absence but, over the years, will continue to do her job. It is apparent from the Commission's decision that it placed more weight upon the opinions of Dr. Mackenzie and the two-physician panel than it did upon Gooby and her treating physician. Thus, the Commission found that Gooby was able to continue working and would have continued working had her employer not gone out of business.

Gooby argues that in this case the employer/surety did not present any testimony from a vocational expert to counter the testimony of Gooby's expert. A vocational rehabilitation expert testified on behalf of Gooby that in his opinion she was not able to perform her former work and was not capable of performing any other work that is regularly and continuously available in her geographic area. The expert also testified that he based his opinions upon Dr. Coffin's opinion regarding Gooby's physical capacities and not upon the reports of either Dr. Mackenzie or the two-physician panel. On cross-examination, he testified that if the reports of Dr. Mackenzie and the two-physician panel were accepted, Gooby would be able to return to work and that in his opinion she would be employable in the Sandpoint area. The Commission concluded that the opinions of Dr. Mackenzie and the panel were more credible than the opinion of Dr. Coffin

■■■ When the findings of the Commission are challenged on appeal, we must focus upon whether they are supported by substantial and competent evidence. This Court must defer to the Commission's findings regarding the credibility of conflicting testimony. *Pomerinke v. Excel Trucking Transp., Inc.*, 124 Idaho 301, 859 P.2d 337 (1993). We cannot reweigh the evidence on appeal, nor are we concerned with what decision we would have made had we been the trier of fact.

**3. Did the Industrial Commission fail to consider medical factors when determining the extent of Gooby's disability?**

■■■ The Commission found that Gooby suffered from a permanent partial impair-ment of 10% of the whole person, inclusive of her permanent partial impairment. Gooby argues that by doing so, the Commission did not consider Gooby's medical factors, totally ignoring the medical evidence that she cannot perform even a sedentary job on a consistent basis. The Commission did consider medical factors when determining Gooby's permanent partial impairment. It simply did not accept Gooby's position regarding those medical factors. The Commission noted that only Dr. Mackenzie and the two-physician panel evaluated Gooby to determine her permanent impairment. When discussing Gooby's impairment, the Commission stated as follows:

> Based on its clinical evaluation and the AMA *Guides to the Evaluation of Permanent Impairment,* fourth edition ("AMA Guides"), the panel rated Claimant as having 0% permanent impairment. Dr. Mackenzie rated Claimant as having 5% permanent impairment. He based this upon the AMA Guides and his clinical evaluation, which included consideration of her muscle guarding, nonuniform loss of range of motion, and nonverifiable complaints of pain, Claimant suffers a permanent impairment of 5% of the whole person from the industrial accident and injury.

The Commission then discussed Gooby's permanent disability, considering both medical and pertinent nonmedical factors. When determining Gooby's disability, the Commission simply did not accept Gooby's evidence regarding the extent of her pain. It noted that she had significant skills as a buyer, business manager, and bookkeeper, and it found that as long as she was free to change positions, she could perform any job involving such tasks.

■■■ A determination by the Commission as to the degree of permanent disability resulting from an industrial injury is a factual question. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 975 P.2d 1178 (1999). That determination will not be disturbed on appeal when it is supported by substantial and competent evidence. *Id.* It is the province of the Commission to decide what weight should be

given to the facts presented and what conclusions should be drawn from those facts. *Id.* The evidence of the medical factors was conflicting, and it was the province of the Commission to decide which evidence to accept.

## C. Was the claimant entitled to an award of attorney fees?

The State Insurance Fund stopped paying Gooby benefits after receiving the report from the two-physician panel. In that report, the panel stated that Gooby was fixed and stable, that her subjective complaints did not show any clinical or objective findings, that she did not need any further treatment, and that she could return to work without limitations. The Fund later had Gooby examined by Dr. Mackenzie on July 29, 1998, who stated in his report that Gooby could return to work with the restriction that she be able to change her position at will, that she did not need further treatment, but that she will need some ongoing pain medication. After receiving Dr. Mackenzie's report, the Fund did not resume paying Gooby's pain medications.

The Commission ultimately found that Gooby was partially disabled until July 29, 1998, and that she was entitled to additional partial disability benefits from April 1, 1998, through July 29, 1998, in the sum of $3,624.55. The Commission declined to award attorney fees under Idaho Code § 72–804 because, "Defendants' decision to discontinue temporary disability benefits was reasonably based upon the evaluation of the panel. Despite the award of additional benefits through July 29, 1998, no attorney fees

are awarded." Gooby argues that because Dr. Mackenzie stated that Gooby would need some ongoing pain medication and the two-physician panel did not mention that issue, it was undisputed that the State Insurance Fund should have continued paying for Gooby's pain medications and its failure to do so renders it liable for attorney fees under Idaho Code § 72–804.[2]

Idaho Code § 72–804 applies only when the employer's or surety's conduct has been unreasonable. *Dennis v. School District # 91*, 135 Idaho 94, 15 P.3d 329 (2000). Whether or not grounds exist for awarding a claimant attorney fees under Idaho Code § 72–804 is a factual determination that rests with the Industrial Commission. *Poss v. Meeker Machine Shop*, 109 Idaho 920, 712 P.2d 621 (1985). The Commission's decision regarding the awarding of attorney fees will be upheld if it is based upon substantial, competent evidence. *Hoye v. DAW Forest Products, Inc.*, 125 Idaho 582, 873 P.2d 836 (1994).

Gooby contended that she should be entitled to attorney fees under Idaho Code § 72–804 due to the State Insurance Fund's unreasonable conduct in ceasing to pay for her pain medications. An employer or surety is required to provide an injured employee with medical care as needed within a reasonable time after an occupational injury. *Harrison v. Osco Drug, Inc.*, 116 Idaho 470, 776 P.2d 1189 (1989); I.C. § 72–432(1).[3] The obligation to pay for medical services under Idaho Code § 72–432(1) is separate from any obligation to pay temporary disability benefits. *Harrison v. Osco Drug, Inc.,*

---

**2.** Idaho Code § 72–804 provides:

If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this

law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

**3.** The statute provides as follows:

(1) The employer shall provide for an injured employee such injured medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

116 Idaho 470, 776 P.2d 1189 (1989). Attorney fees can be awarded under Idaho Code § 72–804 if the employer or surety unreasonably refuses to pay the claimant's medical care. *Id.* Although the Commission found that it was not unreasonable to discontinue temporary disability benefits based upon the panel evaluation, it did not address the issue raised by Gooby that it was unreasonable to discontinue paying for her pain medications. We therefore vacate the denial of attorney fees and remand this case to the Commission for it to determine whether the State Insurance Fund's conduct in ceasing to pay for Gooby's pain medications entitles her to an award of attorney fees under Idaho Code § 72–804. *Cantu v. J.R. Simplot Co.,* 121 Idaho 585, 826 P.2d 1297 (1992).

## V.

### CONCLUSION

We hold that Gooby failed to present evidence showing a failed work attempt under the odd-lot doctrine and that the Industrial Commission's findings regarding the extent of her disability are supported by substantial and competent evidence. We vacate the denial of attorney fees and remand this case for the Commission to determine whether Gooby should be awarded attorney fees under Idaho Code § 72–804 due to State Insurance Fund's conduct in ceasing to pay for her pain medications.

No costs are awarded on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.