# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42237-2014

TERENCE FAIRCHILD,                          )
                                            )          Boise, August 2015 Term
    Claimant-Appellant,                )
                                            )          2015 Opinion No. 90
v.                                          )
                                            )          Filed: September 25, 2015
KENTUCKY FRIED CHICKEN, Employer,           )
and IDAHO STATE INSURANCE FUND,             )          Stephen W. Kenyon, Clerk
Surety,                                     )
                                            )
    Defendants-Respondents.            )
                                            )

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Starr Kelso, Starr Kelso Law Office, Coeur d'Alene, argued for appellant.

H. James Magnuson, Coeur d'Alene, argued for respondents.

---

EISMANN, Justice.

This is an appeal from the order of the Industrial Commission holding that the claimant failed to prove that he suffered a disability in excess of his impairment rating from his industrial accident. We affirm the order of the Industrial Commission.

## I.
## Factual Background.

On November 13, 2004, when he was sixteen years old, Terence Fairchild (Claimant) was employed by Kentucky Fried Chicken (Employer) as a cook. While carrying garbage to a dumpster, he slipped on ice and fell onto a concrete barrier, striking his knees. The impact caused his knees to bleed. He went inside the building, bandaged his knees, and informed his supervisor of the accident.

On December 16, 2004, Claimant sought medical care for his knees. The physician diagnosed his condition as patellofemoral pain following bilateral patella contusions and prescribed knee braces, stretching exercises, Naprosyn, and ice. He saw the physician one week later and continued to suffer pain in both knees. The physician prescribed physical therapy, which failed to alleviate Claimant's symptoms. He returned to the physician on January 6, 2005, and the physician ordered an MRI of Claimant's left knee. The MRI did not reveal any abnormality. After reviewing the results of the MRI with an orthopedist, the physician continued Claimant on physical therapy and anti-inflammatory medication. On February 18, 2005, Claimant filed a complaint seeking benefits under the Worker's Compensation Law, I.C. §§ 72-101 et seq.

On March 1, 2005, Claimant sought a second opinion from Dr. Sims, an orthopedic surgeon. After examining Claimant and reviewing his medical records, the orthopedic surgeon suspected a posterior cruciate ligament injury to Claimant's right knee. Dr. Sims recommended an MRI of Claimant's right knee, but Claimant did not follow up on the recommendation.

On December 13, 2005, Claimant returned to Dr. Sims because of persistent pain. The doctor recommended an MRI evaluation of both knees, which was performed on January 3, 2006. Based upon that evaluation, the doctor diagnosed a partial posterior cruciate ligament injury to Claimant's right knee and recommended a corticosteroid injection. Claimant had the injection, but reported to the doctor on March 31, 2006, that he only experienced some temporary relief. The doctor discussed further treatment with Claimant, but warned that surgery would probably not be beneficial. Claimant returned to the doctor on January 29, 2007, but he again did not recommend surgery. Claimant obtained a second opinion regarding surgery from another physician, who agreed with Dr. Sims's diagnosis and recommendation against surgery. Dr. Sims rated Claimant's permanent partial impairment at 3% of the whole person.

On September 20, 2007, Claimant underwent an independent medical examination by another orthopedic surgeon. That surgeon did not agree with the diagnosis of a posterior cruciate ligament injury to Claimant's right knee. He found that Claimant was medically stable and had sustained no permanent partial impairment. The surgeon conducted another independent medical examination of Claimant on September 16, 2010, and reported that his opinion remained the same.

On August 31, 2011, Claimant had another physician conduct an examination. That physician agreed that Claimant had suffered a partial posterior cruciate ligament injury to his right knee and concluded that Claimant was entitled to a permanent partial impairment of 7%.

On April 17, 2012, the Industrial Commission conducted an evidentiary hearing regarding Claimant's worker's compensation claim and later issued written findings of fact, conclusions of law, and an order. It found that Claimant was not a credible witness based upon its observation of him during the hearing and the differences between his hearing testimony and his prior statements in depositions, interviews, and appointments with medical providers. The Commission concluded that it regarded Claimant's testimony as suspect where it was not supported by other evidence in the record. The Commission found that Claimant had suffered a right posterior cruciate ligament injury in the accident and that as a result of that injury he had a permanent partial impairment rating of 3%. Finally, the Commission found that Claimant had failed to prove that he had a disability in excess of his impairment. Claimant filed a motion for reconsideration, which the Commission denied. Claimant then appealed.

## II.
## Standard of Review.

"[O]ur jurisdiction in appeals from decisions of the Industrial Commission in worker's compensation cases is limited to a review of questions of law." *Fife v. Home Depot, Inc.*, 151 Idaho 509, 513, 260 P.3d 1180, 1184 (2011); *accord* Idaho Const. art. V, § 9. We are constitutionally required to defer to the Commission's findings of fact if they are supported by substantial and competent evidence. *Tarbet v. J.R. Simplot Co.*, 151 Idaho 755, 758, 264 P.3d 394, 397 (2011). "Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Gooby v. Lake Shore Mgmt. Co.*, 136 Idaho 79, 82, 29 P.3d 390, 393 (2001). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Lorca–Merono v. Yokes Wash. Foods, Inc.*, 137 Idaho 446, 451, 50 P.3d 461, 466 (2002).

## III.

**Is the Commission's Finding that Claimant Was Not Credible Clearly Erroneous?**

"The claimant's credibility is certainly an issue that can be considered by the Commission, particularly where the claimant is basing a claim for permanent disability upon complaints of pain." *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 584, 38 P.3d 617, 622 (2001). The determination of a witness's credibility can be based upon observations of the witness's demeanor while testifying (observational credibility) and/or upon inaccuracies or inconsistencies in the witness's testimony or facts that conflict with that testimony (substantive credibility). *Harris v. Indep. Sch. Dist. No. 1*, 154 Idaho 917, 925, 303 P.3d 604, 612 (2013).

The Commission found that Claimant was not credible. It stated:

> Having reviewed the record and observed Claimant at hearing, the Commissioners find that Claimant is not a credible witness. His hearing testimony differed from his prior statements in depositions, interviews, and appointments with medical providers. As mentioned above, he told strikingly different stories regarding his separation from Employer. He was also inconsistent about his involvement in organized sports and his academic achievements. At deposition, he testified that in college, he was a "great" student who earned As and Bs; to Mr. Crum, he stated that he was an average student in both high school and college, graduating at North Idaho College with a 2.5 GPA. Claimant also appears to be prone to exaggeration. He boasted to Dr. Sims that, prior to his injury, he ran twenty miles per day. (At hearing, this changed to the far more plausible five miles per day.) He insists that he used to be able to leg press 1,375 pounds. It is difficult for the Commission to credit such extraordinary athletic feats to an adolescent who attended school full-time, worked part-time, and was heavily involved in music. Having considered all of the above, the Commission regards Claimant's testimony as suspect where it is not supported by other evidence in the record.

(Citations to the agency record omitted.)

The Commission based its finding that Claimant lacked credibility both upon its observations of him during the hearing and the substance of his testimony. On appeal, Claimant challenges both bases for finding him not credible.

With respect to observational credibility, Claimant contends that the Commission did not cite any facts that would support its finding regarding observational credibility. Claimant does not cite any authority requiring a trier of fact to set forth the specific observations of a witness's demeanor that the trier of fact took into consideration in judging the witness's credibility. Indeed, we do not require that the trier of fact do so. The observations of a witness's demeanor that may impact the trier of fact's credibility determination, such as tone of voice, facial gestures,

4

pauses before answering, and body language, would not be recorded in the written transcript of the witness's testimony. Requiring the trier of fact to state such factors would not be verifiable on appeal. In addition, the observations of a witness's demeanor that may affect a credibility determination are often subtle and difficult to capture or describe in words and to quantify. Therefore, the validity of the Commission's credibility determination based upon its observations of Claimant's demeanor while testifying is not impacted by the Commission's failure to describe those observations.

The Commission also recited the inconsistencies in Claimant's testimony that impacted its determination that Claimant was not credible. Claimant filed a motion for reconsideration seeking to explain away those inconsistencies, but the Commission was not convinced. In its order denying the motion for reconsideration, the Commission pointed out Claimant's inconsistent testimony regarding why he left his job with Employer.

On appeal, Claimant contends that the reason he left that employment was not relevant to the issues in this case. It was, however, clearly relevant to the determination of Claimant's credibility. The Commission pointed out that Claimant's accident occurred on November 13, 2004; that in his deposition taken on April 19, 2005, Claimant testified that he worked two additional shifts following the accident; and that his deposition testimony showed that "[d]uring his third scheduled shift, Claimant did not go to work . . . [and instead] decided to play at a concert, but evidently did not notify Employer of this decision." Claimant testified that thereafter Employer did not schedule him and demanded that he return his uniform and any other items of Employer's property. Thus, his deposition testimony showed that he was terminated for skipping work without notifying his employer. During the evidentiary hearing on April 17, 2012, Claimant testified that Employer "would not work with my limitations"; that he asked if he could "just stay on register all day or do some light cleaning up for them"; that Employer determined "that there was nothing that I could do in the company that would benefit them"; and that his "employment ended after they found no use for me."

"We have upheld Commission findings of lack of substantive credibility where a claimant makes inconsistent statements regarding the industrial accident and the symptoms resulting therefrom." *Harris*, 154 Idaho at 925, 303 P.3d at 612. Based upon the two versions of why Claimant's employment was terminated with Employer, the Commission could reasonably conclude that Claimant was willing to lie about the reason for the termination of his employment

5

to make it appear that the accident caused an injury that prevented him from continuing with that type of work. The Commission's credibility determination based upon inconsistencies in Claimant's testimony was not clearly erroneous.

## III.
### Was the Commission's Determination that Claimant Had Failed to Prove that He Had a Disability in Excess of His Impairment Clearly Erroneous?

"The primary purpose of an award of partial permanent disability is to compensate the claimant for loss of earning capacity or his reduced ability to engage in gainful activity." *Graybill v. Swift & Co.*, 115 Idaho 293, 297, 766 P.2d 763, 767 (1988). "A disability rating is based upon both the medical factor of permanent impairment and pertinent nonmedical factors." *Clark v. Truss*, 142 Idaho 404, 407, 128 P.3d 941, 944 (2006). A permanent disability "results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." I.C. § 72-423. "[T]he correct test is whether, after consideration of the pertinent non-medical factors outlined in Idaho Code § 72-430, the claimant's '*probable future ability to engage in gainful activity*' is accurately reflected by the impairment rating." *McCabe v. Jo Ann Stores, Inc.*, 145 Idaho 91, 97, 175 P.3d 780, 786 (2007). "The burden of proof is upon the claimant to prove disability in excess of his impairment rating, although expert testimony on this issue need not be presented." *Seese v. Ideal of Idaho, Inc.*, 110 Idaho 32, 34, 714 P.2d 1, 3 (1985). "A determination by the Commission as to the degree of permanent disability resulting from an industrial injury is a factual question." *Gooby*, 136 Idaho at 88, 29 P.3d at 399.

Claimant presented the testimony of Daniel W. Brownell, who testified that in his opinion Claimant had a 28% disability, inclusive of impairment. The Defendants presented the testimony of Douglas M. Crum, who testified that in his opinion Claimant did not sustain any disability in excess of his impairment. The Commission found Mr. Crum's testimony more credible than Mr. Brownell's. Claimant filed a motion for reconsideration, arguing that Mr. Crum's opinions were flawed and that Mr. Brownell's opinions were sounder. The Commission denied the motion.

The Commission found most persuasive the testimony of the Claimant's treating physician, Dr. Sims. It stated: "Dr. Sims was the only one who treated Claimant over a period

6

of years. He did not assign any limitations or restrictions." With respect to disability in excess of impairment, the Commission found persuasive the testimony of Mr. Crum, who stated that "given the fact that there are no restrictions, it's hard to conclude that the 2004 accident has resulted in any reduction in his ability to engage in gainful activity." In denying Claimant's motion for reconsideration, the Commission stated: "In considering these conflicting opinions and weighing their credibility, the Commission was persuaded by the diagnosis and opinion of Dr. Sims, who was most familiar with Claimant's condition. There are no limitations or restrictions associated with the injury as diagnosed by Dr. Sims." Claimant argues that, by definition, if he had a 3% impairment as found by the Commission, then he must have physical limitations and restrictions.

The evaluation of a claimant's permanent impairment rating is "a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members." I.C. § 72-424. The limitations or restrictions to which the Commission referred were limitations or restrictions as to the type of work (e.g., light duty work or work that does not require bending, twisting, sitting, or lifting more than a specified weight) that Claimant could do in order to prevent re-injury or worsening Claimant's condition. Those restrictions can limit the claimant's opportunities for gainful employment. However, the existence of an impairment rating based upon an evaluation of how a compensable injury impacted Claimant's personal efficiency in the activities of daily living does not necessarily mean that the claimant had restrictions or limitations as to the type of employment activities in which the claimant could engage. Whether an injury resulting in a permanent impairment also requires restrictions or limitations depends upon the facts of the case. For example, in *Rivas v. K.C. Logging*, 134 Idaho 603, 7 P.3d 212 (2000), we upheld a determination that the claimant had a 1% impairment but no restrictions regarding his ability to continue working at his regular occupations. *Id*. at 608-09, 7 P.3d at 217-18. Even the existence of restrictions or limitations would not require a finding of a disability in excess of impairment. *McCabe*, 145 Idaho at 96, 175 P.3d at 785 (post-accident medical restrictions of only occasional bending, twisting, sitting, and overhead activities and no lifting anything over 25 pounds did not, as a matter of law, require a finding of a disability in excess of the claimant's 7% impairment rating).

"[A] permanent disability rating need not be greater than the impairment rating if, after consideration of the non-medical factors in I.C. § 72-425, the claimant's 'probable future ability to engage in gainful activity' is accurately reflected by the impairment rating." *Graybill*, 115 Idaho at 294, 766 P.2d at 764. Claimant has failed to show that the Commission erred in finding that Claimant failed to prove that he had a disability in excess of his impairment rating.

## IV.
## Should Claimant's Counsel Be Required to Pay Attorney Fees Pursuant to Idaho Appellate Rule 11.2?

The Respondents listed as an issue on appeal whether they are entitled to an award of attorney fees against Claimant's attorney pursuant to Idaho Appellate Rule 11.2. Under that rule, attorney fees are awardable against an attorney who signs a brief containing arguments that are not well grounded in fact, warranted by existing law, or made in good faith or who signs a notice of appeal or brief for an improper purpose such as to harass, to cause unnecessary delay, or needlessly increase the cost of litigation. *Sims v. Jacobson*, 157 Idaho 980, 986-87, 342 P.3d 907, 913-14 (2015); *Flying A Ranch, Inc. v. Bd. of Cnty. Comm'rs for Fremont Cnty.*, 156 Idaho 449, 452-54, 328 P.3d 429, 432-34 (2014). However, the Respondents did not include in their brief any argument regarding their request for an award of attorney fees. "[W]here a party requests attorney fees on appeal but does not address the issue in the argument section of the party's brief, we will not address the issue because the party has failed to comply with Idaho Appellate Rule 35." *Morrison v. Nw. Nazarene Univ.*, 152 Idaho 660, 666-67, 273 P.3d 1253, 1259-60 (2012). Therefore, we will not consider the issue.

## V.
## Conclusion.

We affirm the order of the Industrial Commission, and we award Respondents costs on appeal.

Chief Justice J. JONES, Justices BURDICK, W. JONES, and HORTON **CONCUR.**

8