995 P.2d 346

Douglas A. BOLLINGER,
Claimant–Appellant,

v.

**COAST TO COAST TOTAL HARDWARE,**
Employer, and American Motorist Insurance Company, Surety, Defendants–Respondents.

No. 25034.

Supreme Court of Idaho,
Boise, Nov. 1999 Term.

Feb. 17, 2000.

**2**

Goicoechea Law Offices, Chtd., Idaho Falls, for appellant.

Brassey, Wetherell, Crawford & McCurdy, Boise; Eric S. Bailey, Boise, for respondents.

KIDWELL, Justice.

Douglas Bollinger appealed from the Industrial Commission's decision denying his worker's compensation claim for a back injury. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Douglas Bollinger, a resident of Pinedale, Wyoming, worked for Hometown Hardware Coast to Coast (Coast to Coast) in Soda Springs, Idaho, from spring 1992 until July 1993. On February 3, 1993, Coast to Coast employees were unloading freight, using rollers to slide the stock off the truck. A box weighing approximately seventy-five pounds started sliding off the edge of the rollers. Bollinger caught the box and carried it fifteen yards into the store. He continued unloading freight until the end of the shift. When Bollinger returned home, he felt stiff, took some ibuprofen, and went to bed.

The following morning, Bollinger could barely straighten up when he first arose. He went to work, but told his employer, Chad Christensen, of his back pain. Christensen suggested that Bollinger consult Dr. Ryan Anderson, a Soda Springs chiropractor. Dr. Anderson examined Bollinger that day and diagnosed acute lumbosacral strain. Dr. Anderson performed electrotherapy on Bollinger, ordered a back brace, and recommended specific exercises and stretches.

Bollinger returned to Dr. Anderson for additional treatments on February 6, 8, and 10. Dr. Anderson released Bollinger to light duty work on February 8. On February 10, Dr. Anderson noted that Bollinger was feeling good and playing basketball. He recommended that Bollinger start an exercise regime and come three times a week to his office to exercise. Bollinger testified that he did not comply with the recommendation because he could not afford to pay for any therapy.

After a few weeks of light duty, Bollinger returned to full duty at Coast to Coast. Christensen testified that he never saw Bollinger experience any physical difficulties after he returned to full duty, never heard Bollinger complain about back problems, and never received a request for follow-up care after the initial injury.

On March 24, 1993, Dr. Anderson produced a final report on Bollinger's industrial injury. The report noted that Bollinger had responded well to treatment and that he had returned to work with no restrictions. The report also indicated that Bollinger had failed to comply with rehabilitation and the office had lost contact with him. Based on his February 10 findings and Bollinger's lack of communication, Dr. Anderson closed the worker's compensation case.

After his injury, Bollinger played basketball on two local teams and went four-wheeling for recreation. Bollinger returned to Dr. Anderson on May 18, 1993, for neck and back pain he suffered while playing basketball. He testified that he told Dr. Anderson that his lower back still bothered him after he worked a long time standing on his feet. Dr. Anderson's notes confirm that Bollinger complained of lower back pain. After a second treatment on May 20, however, Bollinger never consulted Dr. Anderson again.

In July 1993, Christensen fired Bollinger. Despite the firing, Bollinger and Christensen remained on good terms. Over the next two years, Bollinger visited Christensen several times. Bollinger did not mention back problems or request follow-up care from Christensen until June 1995, nearly two years after his termination.

In the four months after he left Coast to Coast, Bollinger worked as a laborer for two road construction companies. Between Octo-

ber 1993 and June 1994, Bollinger worked for Rocky Mountain Traffic Control where he regularly moved traffic-control barrels weighing seventy pounds. He never told his employers he had back pain. During this period, Bollinger testified, he never suffered job-related injuries but his back hurt in the morning and evening, especially when he had been on his feet all day. Bollinger testified that he treated himself with aspirin and ibuprofen and wore a back brace on the job but did not have the money or time to visit a doctor for back pain. On the two occasions that Bollinger sought emergency medical care in 1994, he did not mention back pain to the treating practitioner.

For the next half year, Bollinger worked as night manager of a pizza parlor in Pinedale. He moved to Missouri in February 1995 and worked at the Sonic Drive-In for four months. Bollinger testified that he did not have any job-related injuries but that his back would hurt when he stayed on his feet for a long time. He said that his lower back progressively got worse and he tried to alleviate the pain with stretching exercises, aspirin, and ibuprofen.

Bollinger testified that he returned to Pinedale in June 1995 "to figure out why I was having so much pain, why my legs were numb." He consulted with Pinedale chiropractor Andrew Nelson on June 8. Dr. Nelson took X-rays but did not treat Bollinger. Instead, he referred Bollinger to Kenneth Lambert, an orthopedist in Jackson, Wyoming. Dr. Lambert assessed Bollinger as having chronic lumbar and cervical strain during his first examination in July 1995. He ordered an MRI, which showed central disc protrusion at L5–S1 and degenerative disc change at L3–L4 and L5–S1.

After the MRI, Bollinger moved back to Missouri and took a job washing dishes. On October 7, 1995, when Bollinger grabbed a fifty-pound "tote" of dishes, he felt a pain in his back so sharp that he dropped the dishes. Bollinger did not file a worker's compensation claim for this incident. The following day, he quit his job and returned to Wyoming. Six days later, Bollinger went to the emergency room of St. John's Hospital in Jackson, Wyoming, complaining of pain in his lower back and legs. In giving the medical history, Bollinger discussed the February 1993 back injury but not the previous week's incident.

Bollinger consulted Dr. Lambert again in late October. Dr. Lambert told him that surgery was not necessary but he needed an intense program of physical fitness, muscle strengthening, and dietary consultation. The doctor referred Bollinger to Susan M. Holz, a physical therapist in Pinedale. Bollinger underwent regular physical therapy for two months. By the end of this regime, he had lost weight, increased in strength, and decreased his lower back pain. In January 1996, Dr. Lambert noted that Bollinger no longer had significant complaints of pain. He diagnosed Bollinger's condition at that time as "[v]ery mild cervical strain, resolving."

Orthopedist Richard Knoebel prepared an evaluation of Bollinger for Coast to Coast in February 1996. Dr. Knoebel characterized Bollinger's complaint as "subjective complaints" of "slight constant pains." Dr. Knoebel concluded that Bollinger's symptoms in 1995 "were not caused, contributed too [sic], or permanently aggravated by the 02–03–93 incident." He attributed Bollinger's symptoms to a non-industrial incident occurring in the summer of 1995.

Orthopedist James Champa prepared a worker's compensation impairment rating of Bollinger in March 1996. He concluded that Bollinger had a 5% whole person impairment of the lumbosacral spine. Dr. Champa concurred with Dr. Lambert's restrictions on physical activity. He noted that, after therapy, Bollinger had "moderate resolution of his symptoms."

Bollinger took a job in the fall of 1996 which required a pre-employment physical. Occumed Corporate Occupational Health Services (Occumed) performed the physical. Bollinger indicated in the patient questionnaire that he had suffered back pain and took ibuprofen under a physician's prescription. The examining physician, however, found his back normal and placed no work limitations on Bollinger.

Bollinger filed a worker's compensation notice of injury and claim for benefits with the Industrial Commission on October 31, 1995. In May 1996, he filed a worker's compensation complaint with the Industrial Commission. He contended that the February 1993 injury caused a lower back condition for which he required treatment until February 27, 1996. Bollinger sought reimbursement for $5,114.10 in medical expenses as well as a 5% permanent physical impairment rating and a 30–50% permanent partial disability rating. Coast to Coast contended that Bollinger's February 1993 industrial injury was resolved on March 24, 1993, when Bollinger's treating chiropractor closed the case. The Industrial Commission conducted a hearing in February 1997, after which both parties submitted additional material.

In August 1998, the Industrial Commission issued its Findings of Fact, Conclusions of Law, and Order. Based on Bollinger's work and recreational history, his perceived lack of credibility, and medical evidence deemed unpersuasive, the Industrial Commission concluded that Bollinger did not meet his burden of proving, on a more probable than not basis, that his existing lower back condition was a continuation of the February 1993 injury. On this basis, the Commission denied compensation for treatment rendered after March 24, 1993. Bollinger filed a timely notice of appeal.

## II.

### STANDARD OF REVIEW

■ When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson)*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

■ The determination of whether an injury arose out of the course of employment is a question of fact to be decided by the Commission. *Kessler ex rel. Kessler v. Payette County*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *See Warden v. Idaho Timber Corp.*, 132 Idaho 454, 457, 974 P.2d 506, 509 (1999).

## III.

### ANALYSIS

**A. Substantial and Competent Evidence Supports the Industrial Commission's Conclusion That Bollinger's Assertions of Continuous Pain Were Not Credible.**

■ The Industrial Commission concluded that Bollinger's allegations of continuous pain since the February 1993 injury were not credible. Bollinger asserts that this finding is not supported by substantial and competent evidence.

■ This Court must uphold the Commission's credibility finding if there is any substantial and competent evidence in the record to support the finding. *Darner v. Southeast Idaho In-Home Servs.*, 122 Idaho 897, 900, 841 P.2d 427, 430 (1992). In finding that Bollinger's assertions of continual pain were not credible, the Commission cited (in addition to Bollinger's demeanor at the hearing) Bollinger's failure to maintain contact with Dr. Anderson; his active lifestyle which included playing basketball, four-wheeling, and hunting; and his failure to disclose his full medical history to the Commission. The Commission also noted that Bollinger undertook heavy manual labor jobs and never [until the October 1995 dishwashing incident] complained to his employers about back pain or missed work due to back pain. Bollinger asserts that none of these is sufficient to show lack of credibility. He argues that he did not return to Dr. Anderson for financial reasons, that his physical activities were not especially jarring, and that he fully disclosed his medical records once admissibility issues were resolved.

As fact finder, the Commission was free to weigh the evidence to determine if Bollinger's testimony was credible. A reasonable person could conclude that Bollinger's failure to follow up on the recommended rehabilitation, even for financial reasons, meant that his lower back pain had abated. The Commission could also reasonably interpret Bollinger's willingness to participate in strenuous physical activity as an indication of no back pain.

The Commission could also conclude that Bollinger's initial failure to disclose the Occumed medical file showed a lack of credibility. In August 1996, Occumed found Bollinger's spine, neurologic conditions, lumbar spine, and lower-extremity strength and range of motion to be normal and recommended Bollinger for work without limitations. This file was not revealed at the time of the Commission's hearing. Evidently defense counsel, in an affidavit, revealed the existence of the Occumed records to the Commission in March 1997. Thereafter, Bollinger's attorney and defense counsel stipulated to the admission of the Occumed records. The Commission erroneously cited defense counsel's affidavit, which was not in the record, in its findings of fact. However, the Occumed materials themselves supported the Commission's finding that Occumed's medical practitioner found Bollinger to present no unusual circumstances or physical problems. On this basis, a fact finder could reasonably infer that Bollinger's reluctance to disclose this information was an attempt to withhold potentially impeaching information.

The above evidence is sufficient to support a conclusion that Bollinger's assertion of continuous back pain was not credible. Therefore, we hold that there is substantial and competent evidence that Bollinger's testimony of continuous pain was not credible.

**B. Substantial and Competent Evidence Supports the Industrial Commission's Conclusion That Medical and Other Evidence Did Not Prove That Bollinger's 1995 Lower Back Condition Was Causally Linked to the February 1993 Injury.**

■ In addition to deciding that Bollinger's assertions of continual pain were not credible, the Commission found that Bollinger's medical and other evidence did not prove, on a more probable than not basis, that his 1995 lower back condition was causally linked to the February 1993 injury. Bollinger asserts that this finding is not supported by substantial and competent evidence.

In weighing the medical evidence, the Commission concluded that none of the offered exhibits either proved or disproved that Bollinger's 1995 condition stemmed from his February 1993 injury. Dr. Lambert's causation opinion was based on Bollinger's assertion of continuous pain since 1993, which the Commission had found not credible; Dr. Champa's evaluation was suspect because Bollinger did not inform him of the October 1995 incident; and Dr. Knoebel's conclusion that a June 1995 event had caused Bollinger's lower back condition appeared unsubstantiated and perhaps arbitrary because no facts in the record showed an accident or injury at the time.

Finding the medical evidence inconclusive, the Commission examined other evidence to determine causation. It concluded that Bollinger had not proved a causal relationship based on the following evidence: (1) Bollinger's employment in jobs requiring heavy manual labor after his termination from Coast to Coast; (2) his failure to complain of back pain or miss work due to back pain after 1993 [until the October 7, 1995 incident]; (3) the delay between his quitting the Sonic Drive-In in May 1995 (which he testified was in order to seek medical treatment in Wyoming for his back) and his seeking treatment in June 1995; and (4) his failure to seek medical attention for back pain from May 20, 1993 until June 8, 1995.

Indisputably, in and after June 1995 Bollinger consistently asserted that he experienced severe and continuing back pain between February 1993 and June 1995. The only evidence before the Commission of any back problem during this period, other than Bollinger's own testimony, was Dr. Anderson's notes of May 18, 1993. On that date, Bollinger sought treatment for neck and upper back injuries incurred in playing basketball, and Dr. Anderson's medical rec-

ords contain a reference to lower back pain. The Commission recognized that Bollinger might have received treatment for his back in May 1993 by mentioning the hiatus in treatment between *May* 1993 and June 1995. The Commission came to a reasonable conclusion, however, that the May 1993 records did not sufficiently support the conclusion that the condition treated in and after June 1995 emanated from the same source.

Bollinger failed to bring forward *any* evidence showing that he had complained to others about back pain, been physically limited by back pain, or sought treatment for back pain between May 1993 and June 1995. On the other hand, Bollinger continued to engage in jarring physical activities and undertook jobs requiring heavy physical labor. In contrast, by February 1996, when Bollinger did suffer from a lower back condition, he severely limited potentially jarring physical activities. The Commission reasonably concluded that Bollinger's silence and his actions were inconsistent with those expected of a person with severe and persistent lower back pain. It is reasonable to conclude that this negative evidence cast doubt on a causal link between the February 1993 injury and the 1995 lower back condition.

Although medical experts may disagree and reasonable minds could argue the persuasiveness of the evidence, this Court holds that there was sufficient and competent evidence for the Industrial Commission to conclude that Bollinger failed to prove a causal link between his February 1993 injury and his lower back condition in June 1995.

### IV.

### CONCLUSION

Because substantial and competent evidence supports the Commission's findings, we affirm the order of the Industrial Commission. Costs to respondents. No attorney fees on appeal are awarded because they were not requested.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS concur.