7 P.3d 212

**Guillermo RIVAS, Claimant–Appellant,**

v.

**K.C. LOGGING, Employer, and Associated Loggers Exchange, Surety, Defendants–Respondents.**

No. 25218.

Supreme Court of Idaho,
Idaho Falls, May 2000 Term.

July 25, 2000.

Jenkins Law Office, Chartered, Idaho Falls, for appellant. Gordon W. Jenkins argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Michael G. McPeek argued.

KIDWELL, Justice.

Guillermo Rivas appeals from the Industrial Commission's determination that he is entitled to a 1% whole person impairment attributable to his industrial injury. Rivas claims that he suffers a 14% whole person impairment as a result of his injury and that he suffers disability in excess of impairment. The decision of the Industrial Commission is affirmed.

## I.

## FACTS AND PROCEDURAL HISTORY

Guillermo Rivas was born in Mexico and received at most a second-grade education. He cannot read or write in Spanish or English. He came to the United States approximately twenty years ago and has supported his family by logging and manual labor in potato cellars.

On August 14, 1996, Rivas was working for K.C. Logging. When his chainsaw kicked back, Rivas received a ten-centimeter (four-inch) laceration above the left knee. Rivas was taken to a hospital in Rexburg, where he received 58 sutures. Several days later, he developed cellulitis, an inflammation of connective tissue, on the left thigh around the laceration. For several weeks, Rivas received treatment for the cellulitis from the hospital and its home health care agency. By mid-September, the cellulitis was no longer a medical problem.

Rivas first visited Spanish-speaking family physician C.J. Zollinger in Rexburg about a month after the industrial accident. He continued to visit Zollinger on approximately a monthly basis, complaining of ever-increasing pains. On September 12, 1996, Rivas complained only that he was experiencing numbness in his leg. Two weeks later, he complained about varicose veins, pain in his leg, and pain radiating from his back to the laceration. Zollinger ordered a computed tomography (CT) scan, which showed normal results. Rivas reported pains radiating up and down from his laceration in October. In December, he developed adult-onset diabetes and Zollinger further diagnosed him with depression. In February 1997, Rivas told Zollinger that he had fallen when the chain-

saw kicked back and the fall had caused left arm pain from his neck to his hand. By August, he reported falling several times a week. Zollinger believed that Rivas's symptoms, including the depression and the diabetes, stemmed from the industrial accident, even though he could not identify a particular cause. He recommended retraining and gave Rivas a 14% whole man impairment rating.

Based on Zollinger's referral, Rivas visited Idaho Falls physician Gary Walker three times in 1996. Walker was a board-certified physiatrist, or specialist in physical medicine and rehabilitation. According to Walker, Rivas's outward demonstration of pain "exceeded at least ninety-five percent of my patients." The nerve conduction and electromyogram (EMG) studies conducted by Walker showed normal results. Because Walker could find no physical reason for Rivas's symptoms, he suspected "a behavioral component to his symptoms." He recommended exercise and a work-reconditioning program as a bridge to returning Rivas to work. Rivas expressed dissatisfaction with Walker's suggestions and did not return for a scheduled appointment in December 1996. In response to a request by Rivas's attorney for a permanent impairment rating, Walker gave Rivas a 1% whole person impairment rating. He stated that there was no objective reason for a limitation on Rivas's working capacities, but a slight sensory impairment of the femoral nerve was possible and would justify a 1% rating.

Eight other physicians examined Rivas. None could find a physical cause for his pain. In an evaluation prepared for the state Disability Determinations Unit, physician Clark Jaynes noted Rivas's loud complaints and inconsistent answers and opined that Rivas was exaggerating the extent of his pain. In addition, seven doctors examining Rivas for the worker's compensation surety concluded that Rivas was either faking or exaggerating his pain, and all recommended that he return to employment without restriction.

Since the accident, Rivas has worked only a few days either logging or in potato cellars. Rivas testified that he could not continue with either of these jobs because of extreme pain.

Rivas filed a worker's compensation complaint with the Industrial Commission, claiming permanent impairment and disability and entitlement to additional medical benefits. After a hearing, the Commission's referee issued findings of fact and conclusions of law. Among the findings were the following:

- Rivas's leg weakness was unrelated to his industrial accident.

- Rivas did not prove by sufficient medical evidence that his limp was caused by a back injury sustained during the industrial accident.

- Rivas did not prove by sufficient medical evidence that his upper extremity complaints were caused by his industrial accident.

- Rivas's diabetic condition was pre-existing.

- Rivas did not meet his burden of proving that he suffered depression as a result of the industrial accident.

- Zollinger's 14% impairment rating lacked a foundation, because it was based on Rivas's subjective pain complaints which were not credible.

- Rivas suffers a permanent physical impairment of 1% of the whole person due to the industrial accident.

- Because Rivas suffers no pain equivalent to a functional loss, he can work without restriction and can return to work logging and doing manual labor in potato cellars.

- Rivas suffers no disability in excess of impairment.

The Industrial Commission issued an order adopting the referee's findings of fact and conclusions of law. It concluded that Rivas had met his burden of proving that he suffered a 1% whole person impairment attributable to the industrial injury, but that Rivas had not proved that he suffered any disability in excess of impairment. Rivas filed a timely notice of appeal.

## II.

### STANDARD OF REVIEW

■ When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Bollinger v. Coast to Coast Total Hardware*, 134 Idaho 1, 4, 995 P.2d 346, 349 (2000); *see also* I.C. § 72–732. Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion. *Bollinger*, 134 Idaho at 4, 995 P.2d at 349. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* Whether a claimant has an impairment is a factual determination. *See Urry v. Walker and Fox Masonry Contractors*, 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989). Likewise, the degree of permanent disability resulting from an industrial injury is a question of fact. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 516, 975 P.2d 1178, 1181 (1999).

## III.

### ANALYSIS

A. **Substantial and Competent Evidence Supports the Industrial Commission's Finding That Rivas Suffers a Permanent 1% Whole Person Impairment due to the Industrial Accident.**

■ The Commission found that Rivas suffered a permanent physical impairment of 1% of the whole person due to his industrial accident. Rivas contends that the Industrial Commission erred in concluding that Rivas's impairment was only 1%.

■ "'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonpro-

gressive at the time of evaluation." I.C. § 72–422. Because it relates to functional loss, pain is a medical factor that must be considered in determining impairment. *Urry*, 115 Idaho 750, 755, 769 P.2d 1122, 1127. Although evaluation of permanent impairment is a medical appraisal, I.C. § 72–424, the Industrial Commission, rather than a treating physician, is the ultimate evaluator of impairment. *Urry*, 115 Idaho at 755, 769 P.2d at 1127. While a physician should take a patient's complaints concerning pain into account when reaching an opinion about impairment, the physician's opinion is not binding on the Commission. *Id.* at 756, 769 P.2d at 1128.

Five physicians rated Rivas as having a 1% impairment. Physiatrist Gary Walker, who saw Rivas on Zollinger's referral, was struck by Rivas's extreme pain behavior, which he believed showed a "behavioral component" to Rivas's symptoms. Walker testified that Rivas exhibited extremely unusual behaviors such as leaning to a side inconsistent with his reported pain and reporting pinprick sensations that did not correspond to his reported injuries. Nerve conduction, EMG, and CT studies did not show any underlying injury to nerves or discs consistent with a back injury or scapular injury incurred at the same time as the laceration. Because the laceration was so deep and so close to the femoral nerve, Walker concluded that Rivas likely experienced a slight sensory impairment of the femoral nerve, justifying a 1% rating. Four physicians who examined Rivas for the worker's compensation surety concurred in Walker's assessment.

■ The Commission, as factfinder, was free to determine the weight to be given to the testimony of the testifying physicians. *Urry*, 115 Idaho at 756, 769 P.2d at 1128. The Commission rejected Zollinger's 14% rating for several reasons. In making his rating, Zollinger did not use rigorous methodology, and he relied solely upon Rivas's subjective complaints, which the Commission did not find to be credible. As Zollinger conceded, no anatomical, physiological, or neurological explanation linked Rivas's back problems, lower leg problems, upper extrem-

ity problems, or limp to injuries sustained in the industrial accident. Because medical records showed that the diabetic condition was pre-existing, the Commission did not give credence to Zollinger's opinion that the industrial accident caused Rivas's adult-onset diabetes to emerge. Finally, the Commission rejected Zollinger's diagnosis that depression resulted from the industrial accident for three reasons: Zollinger did not use a standard reference book (the Diagnostic and Statistical Manual, or DSM–IV) to justify the diagnosis; Zollinger's own notations indicated that Rivas was more frustrated with the worker's compensation surety than depressed; and the only psychiatrist to examine Rivas concluded that Rivas did not suffer from depression.

Based on the evidence, we hold that substantial and competent evidence supports the Commission's finding that Rivas suffered a 1% whole person impairment as a result of the industrial accident.

### B. Substantial and Competent Evidence Supports the Industrial Commission's Finding That Rivas Suffers No Disability in Excess of Impairment.

In its findings under the heading of "Disability," the Industrial Commission found that Rivas suffered no pain equivalent to a functional loss. It also found that Rivas was able to work without restriction at his regular occupations of logging and manual labor in potato cellars. The Commission also found that Rivas suffered no disability in excess of impairment. Rivas contends that the Industrial Commission erred in concluding that he suffered no disability in excess of impairment. He asserts that the evidence clearly shows that because of his injury, work history, and lack of education, that he is not employable in the labor market.

The definition of "disability" under worker's compensation law is "a decrease in wage-earning capacity due to injury or occupational disease, as such capacity is affected by the medical factor of physical impairment, and by pertinent nonmedical factors as provided in section 72–430, Idaho Code." I.C. § 72–102(10). A permanent disability results "when the actual or presumed ability to en-

gage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." I.C. § 72–423. A rating of permanent disability is "an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors." I.C. § 72–425. Among the pertinent factors are the following:

- The nature of the physical disablement;
- The cumulative effect of multiple injuries;
- The employee's occupation;
- The employee's age at the time of the accident;
- The employee's diminished ability to compete in the labor market within a reasonable geographic area;
- All the personal and economic circumstances of the employee;
- Other factors deemed relevant by the Commission.

I.C. § 72–430.

Whether an individual is disabled is determined by whether the individual has suffered a decrease in wage-earning capacity. *Sykes v. C.P. Clare and Co.*, 100 Idaho 761, 764, 605 P.2d 939, 942 (1980); I.C. § 72–102(10). The decrease in wage-earning capacity must be "due to injury or occupational disease." I.C. § 72–102(10). Likewise, disability only results when the claimant's ability to engage in gainful activity is reduced or absent "because of permanent impairment." I.C. § 72–423. Only after the impairment reduces the claimant's earning capacity do the pertinent nonmedical factors come into play. *See* I.C. § 72–102(10).

In this case, the Commission found that Rivas could work without restriction at his regular occupations. Evidence from nine physicians supported this finding. Physiatrist Walker testified that there was no objective reason for a limitation on Rivas's working capacities. In a report to the worker's compensation surety, three physicians stated that Rivas was malingering and concluded that he could return to work logging

without vocational rehabilitation. Dr. Jaynes, although he did not specifically state whether Rivas could return to work, informed the state Disability Determinations Unit that most of Rivas's complaints and answers were "amplified if not frankly exaggerated." In addition, members of a panel that examined Rivas on behalf of the worker's compensation surety testified that Rivas could return to employment without restrictions.

The Commission concluded that although Rivas did suffer a 1% impairment due to sensory loss, this impairment did not decrease his wage-earning capacity because he was able to work without restriction in his regular occupations. Because he was able to work without restrictions, he did not suffer any disability in excess of his impairment. The pertinent non-medical factors of I.C. § 72–430 such as Rivas's limited education and his inability to speak or understand English never became relevant. Because the relevant factors were supported by substantial and competent evidence, we hold that substantial and competent evidence supports the Commission's finding that Rivas suffered no disability in excess of impairment.

## C. We Decline to Award Attorney Fees on Appeal.

K.C. Logging asks this Court to award attorney fees as a sanction against Rivas's attorney pursuant to I.A.R. 11.1. It argues that Rivas is merely asking this Court to reweigh evidence and the credibility determinations made by the Commission.

Generally, this Court does not award attorney fees in appeals by claimants from decisions of the Industrial Commission. I.C. § 72–1375(2) ("No individual claiming benefits shall be charged fees or costs of any kind in any proceeding under this chapter ... by any court or any officer thereof, except that a court may assess costs if the court determines that the proceedings have been instituted or continued without reasonable ground."); *Teevan v. Office of the Attorney General*, 130 Idaho 79, 84–85, 936 P.2d 1321, 1326–27 (1997). If the Court finds, however, that in bringing an appeal a party has violated I.A.R. 11.1, it must impose sanctions, which may include attorney fees. I.A.R. 11.1. Rule 11.1 requires that a brief be well grounded in fact and "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." I.A.R. 11.1.

Where legitimate issues exist, this Court has declined to award attorney fees in claimants' appeals from the Industrial Commission. *See Bullard v. Sun Valley Aviation, Inc.*, 128 Idaho 430, 435, 914 P.2d 564, 569 (1996). Even where substantial and competent evidence exists and the claimant mounts a factually-based appeal, this Court imposes sanctions pursuant to I.A.R. 11.1 only if the appellant's arguments are "made in bad faith" or "interposed for any improper purpose." *Tupper v. State Farm Ins.*, 131 Idaho 724, 731, 963 P.2d 1161, 1168 (1998).

This Court finds no evidence of bad faith or improper purpose in Rivas's appeal. Therefore, we decline to award attorney fees.

## IV.

## CONCLUSION

Because substantial and competent evidence supports the Industrial Commission's findings that Rivas has a 1% whole person impairment and that he does not suffer disability in excess of impairment, the decision of the Industrial Commission is affirmed. Costs to respondents. No attorney fees on appeal are awarded.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.