30 P.3d 952

**Guadalupe LOPEZ, Claimant–Appellant,**

v.

**STATE of Idaho, Industrial Special Indemnity Fund, Defendant–Respondent.**

**No. 25967.**

Supreme Court of Idaho,
Idaho Falls, May 2001 Term.

July 26, 2001.

Beck & Guthrie, Chartered, Idaho Falls for appellant. Robert K. Beck argued.

Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls for respondent. Paul B. Rippel argued.

EISMANN, Justice.

Guadalupe Lopez is totally and permanently disabled from an occupational disease. She appeals from the Industrial Commission's ruling that the Industrial Special Indemnity Fund (ISIF) was not liable for benefits under Idaho Code § 72–332 even though she had a pre-existing, permanent physical impairment from an earlier manifestation of the disease. We affirm the ruling of the Industrial Commission.

## I.

### FACTS AND PROCEDURAL HISTORY

In approximately 1977 at the age of 40, Lopez began working for Basic American Foods on the trim line. Her work involved extensive hand trimming of potatoes. In 1979 she sought medical attention due to cervical pain, and her physician diagnosed her as having early degenerative changes in her cervical spine. Her complaints resolved with conservative care, and she returned to work.

In December 1986, Lopez developed pain in her right arm, chest, and shoulder while sorting potatoes. She again sought medical attention, and her physicians treated her for cervical spine disease and C6 radiculopathy. As a result, she was off work from December 1986 until February 1987. Her symptoms improved with medication and therapy to the point that she was able to return to work, although since this 1986 incident she has had numbness in her right index finger and in portions of her right forearm.

In February 1991, Lopez felt a sharp pain between her shoulders while she was throwing potatoes from a basket. The pain worsened for several days to the point that she was unable to continue working. She again sought medical attention, which included chiropractic care, pain medications, and therapy. One of her treating physicians indicated that she would eventually need cervical therapy. She was off work due to her cervical pain until January 14, 1992. When she returned to work, her residual symptoms were worse than they had been after her 1986 injury. She had pain in both hands and awoke at night with bilateral hand numbness. She began taking over-the-counter pain medications regularly in order to continue working.

In February 1997, Lopez again felt a sharp pain between her shoulders while working at sorting and throwing potatoes. She also began to suffer balance problems. She continued working until March 9, 1997, when she could no longer tolerate the pain and sought medical attention. Her physician prescribed pain medications, and her employer changed her job to light-duty office cleaning, sorting papers, and filing. On April 17, 1997, a cervical MRI revealed prominent bulging discs and osteophyte complexes at C5–6 and C6–7. Lopez ceased working on April 19, 1997, and one month later she underwent surgery, which reduced, but did not eliminate, her pain.

On February 13, 1996, Lopez filed a complaint with the Industrial Commission seeking worker's compensation benefits for the February 1991 incident, and on September 16, 1997, she filed a second complaint seeking benefits for the February 1997 incident. Upon motion of the employer/surety, both complaints were consolidated. On June 24, 1998, the employer/surety filed a complaint against the ISIF, and the matter was set for hearing on October 22, 1998. Before the hearing, Lopez and the employer/surety entered into a lump sum agreement, which was approved by the Commission. The only issue tried at the hearing was the liability of the ISIF. Based upon the evidence presented, the Commission determined that ISIF was not liable to Lopez, and she appealed.

## II.

### STANDARD OF REVIEW

 When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Rivas v. K.C. Logging,* 134 Idaho 603, 7 P.3d 212

(2000). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.* Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* We exercise free review over the construction of a statute. *Crawford v. Department of Corr.*, 133 Idaho 633, 991 P.2d 358 (1999).

## III.

### ISSUES ON APPEAL

A. Is the Industrial Commission's finding that Lopez suffered a progressive industrial disease rather than a series of industrial accidents or injuries supported by substantial and competent evidence?

B. When a claimant becomes totally and permanently disabled from a progressive, occupational disease, is the Industrial Special Indemnity Fund liable for benefits under Idaho Code § 72–332 if the claimant had a pre-existing, permanent physical impairment from an earlier manifestation of that disease?

C. Did the Industrial Commission err in failing to award Lopez attorney fees?

## IV.

### ANALYSIS

**A. IS THE INDUSTRIAL COMMISSION'S FINDING THAT LOPEZ SUFFERED A PROGRESSIVE INDUSTRIAL DISEASE RATHER THAN A SERIES OF INDUSTRIAL ACCIDENTS OR INJURIES SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE?**

The Commission found that Lopez suffers from a degenerative cervical disc disease and cervical arthritis and that the hazard of that condition was increased by the repetitive head, neck, and bilateral arm movements characteristic of the potato sorting and trimming work she performed. It found that as a result of her employment at Basic American Foods, Lopez incurred a compensable occupational disease that totally incapacitated her by April 1997. After con-

sidering the medical and nonmedical factors, the Commission found that Lopez was totally and permanently disabled under the odd-lot doctrine. Finally, the Commission found that Lopez suffered a single, progressive disease and not an industrial accident or injury.

In making its findings, the Commission relied upon the testimony given by Dr. Walker, a physician who examined Lopez on July 8, 1998, at the request of the employer/surety. The parties deposed Dr. Walker on September 2, 1998, and again on October 19, 1998. In its Findings of Fact, the Commission quoted and cited portions of Dr. Walker's testimony as follows:

> Dr. Walker testified that Claimant's turning of her head in 1986 most likely caused a temporary nerve compression which produced the upper extremity symptoms she reported at that time. He placed a 5% impairment rating on Claimant's degenerative cervical condition as it existed in 1986. Dr. Walker did not attribute any additional permanent impairment to Claimant's 1991 flare up of cervical symptoms. Considering the progression of Claimant's cervical disease, Dr. Walker opined: "The bottom line is we're talking about a process here that is not an isolated injury, but rather a summation of not only a few different isolated episodes, but also a summation of years and years of doing repetitive motion." Walker Deposition, p. 26 (October 19, 1998). Dr. Walker testified that an acute episode can start or at least speed up a degenerating cascade. Although not using the precise statutory phrase "aggravation and acceleration," Dr. Walker testified that Claimant's final episode in March 1997 was "the kicker that put her over the top .... the straw that broke the camel's back" and produced severe symptoms which forced her to surgery. Walker Deposition, p. 38 (October 19, 1998).

The Commission then concluded, "Dr. Walker clearly indicated Claimant's condition was not an isolated episode, but rather the result of years of repetitive motion." Lopez contends that the Commission misinterpreted Dr. Walker's testimony. She argues that Dr. Walker described two different processes: a

degenerative disease aggravated by years of doing repetitive motion and three separate isolated accidents or injuries that aggravated her preexisting disease.

■ It is the role of the Industrial Commission, not this Court, to determine the weight and credibility of testimony and to resolve conflicting interpretations of testimony. *Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 11 P.3d 475 (2000); *McAlpin v. Wood River Medical Center*, 129 Idaho 1, 921 P.2d 178 (1996); *Monroe v. Chuck & Del's, Inc.*, 123 Idaho 627, 851 P.2d 341 (1993). On appeal, this Court will not conduct a de novo review of the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 11 P.3d 475 (2000); *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927 (1986). This Court will not disturb the Commission's factual findings unless they are clearly erroneous. *Spencer v. Allpress Logging, Inc.*, 134 Idaho 856, 11 P.3d 475 (2000). Considering the testimony given by Dr. Walker during both of his depositions, we cannot find that the Commission's interpretation of his testimony was clearly erroneous.

## B. WHEN A CLAIMANT BECOMES TOTALLY AND PERMANENTLY DISABLED FROM A PROGRESSIVE, OCCUPATIONAL DISEASE, IS THE INDUSTRIAL SPECIAL INDEMNITY FUND LIABLE FOR BENEFITS UNDER IDAHO CODE § 72–332 IF THE CLAIMANT HAD A PRE–EXISTING, PERMANENT PHYSICAL IMPAIRMENT FROM AN EARLIER MANIFESTATION OF THAT DISEASE?

■ Lopez contends that she is entitled to benefits from the ISIF under Idaho Code § 72–332(1).[1] The Commission found that in 1986, due to her cervical condition, Lopez had a permanent, physical impairment equal to 5% of the whole person and that such impairment resulted from her degenerative condition and her work at Basic American Foods. As discussed above, the Commission also found that her cervical condition continued to deteriorate to the point that in March 1997 she became totally and permanently disabled. Lopez argues that the continued worsening of her degenerative disease constitutes a subsequent occupational disease thereby making the ISIF liable for contribution for her total and permanent disability. The Commission ruled, "To agree with Claimant that one progressive disease with evidence of two impairment ratings issued at two separate points in time qualifies for a subsequent disease, would be to unreasonably increase ISIF's liability beyond the intent of the legislature." We agree.

■ An interpretation of a statute is a question of law over which we exercise free review. *State ex rel. Industrial Commission v. Quick Transp., Inc.*, 134 Idaho 240, 999 P.2d 895 (2000). If the statutory language is unambiguous, we merely apply the statute as written. *Id.* If it is ambiguous, then we attempt to ascertain the legislative intent. *Id.* When doing so, we may examine the language used, the reasonableness of proposed interpretations, and the policy behind the statute. *Id.*

■ The statute first states that an employee must have "a permanent physical impairment[2] from any cause or origin." It next states that the employee must incur "a subsequent disability by an injury or occupational disease arising out of and in the course of his employment." Finally, it states that

1. The statute provides:
 If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

2. The permanent physical impairment must be an impairment that was manifest and that was a subjective hindrance to employment or to obtaining re-employment. *Hoye v. DAW Forest Products, Inc.*, 125 Idaho 582, 873 P.2d 836 (1994); I.C. § 72–332(2).

the employee must suffer total and permanent disability "by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment." When the statute is read in context, the phrase "subsequent disability" must refer to a disability caused by "the subsequent injury or occupational disease." To be a subsequent injury or occupational disease, it must occur after the pre-existing impairment. *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 772 P.2d 119 (1989) (for I.C. § 72–332 to apply, the impairment must pre-exist the injury). When the pre-existing impairment is caused by an occupational disease, the subsequent occupational disease must follow in time. It must be a second occupational disease that occurred after the first one. In this case, Lopez did not suffer a subsequent occupational disease. From 1979 through 1997, she suffered the same occupational disease that simply grew worse.

■ For the ISIF to be liable under Idaho Code § 72–332(1), there must be a subsequent injury or occupational disease that combines with, or aggravates or accelerates, a pre-existing, permanent physical impairment to render the employee permanently disabled. It is not enough simply to show that the occupational disease that caused a pre-existing impairment grew worse until the employee became totally and permanently disabled.

Lopez argues that even if the Commission was correct in finding that she suffered only an occupational disease, "clearly the Claimant suffered a pre-existing condition which **stabilized** and, after a period of years, was aggravated by a subsequent occupational exposure resulting in her permanent disability." (Emphasis in original.) She bases her argument that her condition stabilized upon the medical testimony that her impairment rating did not increase during the period from 1986 to 1997. The fact that Lopez's impairment rating did not change for several years does not mean that her condition had stabilized. In *Reynolds v. Browning Ferris Indus.*, 113 Idaho 965, 751 P.2d 113 (1988), the claimant suffered an industrial accident that caused degenerative arthritis in his right hip which, according to the medical testimo-

ny, would continue to deteriorate to the point that he would require either a hip fusion or a total hip replacement. The Commission initially awarded him a permanent partial impairment and retained jurisdiction to determine the amount of his permanent partial disability. Several years later the Commission revisited the case, determined that the claimant's impairment had not changed, and then entered a final order establishing the claimant's permanent disability based upon his original impairment rating. This Court reversed because neither physical impairment nor disability is permanent until the point that no further deterioration or change can be expected and the uncontroverted medical testimony was that the claimant's condition was progressive. The mere fact that Lopez's impairment rating did not change does not mean that her degenerative cervical disc disease stabilized. The medical testimony was that as long as Lopez continued working on the trim line, the repetitive motions and activities would cause her degenerative arthritis to continue to worsen.

## C. DID THE INDUSTRIAL COMMISSION ERR IN FAILING TO AWARD LOPEZ ATTORNEY FEES?

■ Lopez contends that the Commission erred in failing to award attorney fees under Idaho Code § 72–804 against the ISIF because it contested liability without reasonable ground. Because we hold that the Commission correctly determined that ISIF did not have liability under Idaho Code § 72–332, the Commission did not err in failing to award Lopez attorney fees.

## V.

## CONCLUSION

We affirm the order of the Industrial Commission. Costs are allowed to respondent ISIF.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL CONCUR.