63 P.3d 462

**Gary M. HOSKINS, Claimant–Respondent–Cross Appellant,**

v.

**CIRCLE A CONSTRUCTION, INC., Employer and American Manufacturing Mutual, Surety, Defendants–Appellants–Cross Respondents.**

**No. 26719.**

Supreme Court of Idaho, Boise, December 2001 Term.

Jan. 28, 2003.

Bowen & Bailey, LLP, Boise, for appellants. David V. Nielsen argued.

**338**

Luverne E. Shull, Jerome, for respondent.

## SUBSTITUTE OPINION

## THE COURT'S PRIOR OPINION DATED MARCH 22, 2002 IS HEREBY WITHDRAWN

SCHROEDER, Justice.

This is an appeal from the Industrial Commission, which awarded benefits to Gary Hoskins (Hoskins) from January 9, 1998 through April 7, 1999 because of respiratory problems associated with metal fume fever. His employer, Circle A Construction (Circle A), contends that there is no evidence to support the Commission's findings that Hoskins was entitled to benefits from October 14, 1998 to April 7, 1999. Hoskins filed a cross-appeal, arguing that earnings from his private business should have been taken into account by the Commission and that the Commission improperly calculated his benefits. The decision of the Commission is affirmed in part and remanded in part.

## I.

## FACTS AND PROCEDURAL HISTORY

At the time of the hearing before the Industrial Commission, Hoskins was fifty-six years old. He had worked primarily as a welder for the past 30 years. In November, 1993 he began having breathing problems. He was diagnosed with chronic obstructive pulmonary disease (COPD), emphysema related to his smoking and welding activities, and asthma. He worked as a welder for Circle A and had a side business called Pro West Welding.

On January 7–8, 1998, Hoskins cut galvanized metal with a torch for about six hours in a poorly ventilated area. He experienced symptoms of respiratory distress during this work, and on January 9, 1998, was hospitalized. Dr. Bontrager diagnosed acute congestive heart failure and pulmonary hypertension. Larry Smith and Terry Billingsley, Hoskins' coworkers, also performed similar jobs on these days and became ill, but returned to work after several days.

Dr. Wayne Wright, a cardiologist, assumed Hoskins' treatment. Dr. Wright reached nine separate diagnoses for Hoskins, including acute bronchitis, severe COPD, and polysythemia. Hoskins' emergency room diagnosis did not include metal fume fever. Hoskins was discharged on January 15, 1998, and went to Dr. Ron Fullmer, who had originally diagnosed Hoskins with COPD and emphysema in 1993.

Dr. Fullmer diagnosed severe COPD:

1. SEVERE COPD. The patient's obstructive airway disease has significantly worsened over the past 3–4 years. It is interesting to note that he discontinued his smoking 4 or 5 years ago. His main exposure has been the work in the welding shop which is likely what caused the further deterioration in his pulmonary functions. *The patient's recent exacerbation requiring admission to the hospital was also probably precipitated by metal fume fever,* due to the fumes from cutting and welding on the galvanized metal.

(emphasis added).

Dr. Fullmer placed Hoskins on continuous supplemental oxygen therapy, which continued until April 7, 1999. Circle A's expert, Dr. Emil Bardana, testified that metal fume fever is a condition that generally lasts only 2–4 days. On October 14, 1998, Dr. Fullmer recognized that Hoskins' breathing had returned almost to its pre-accident level.

Hoskins contended that the contraction of metal fume fever, combined with his preexisting conditions of COPD, emphysema and asthma, rendered him totally and permanently disabled. The matter was heard before Commission Referee Michael Powers on September 28, 1999, who determined that Hoskins suffered an accident resulting in a personal injury on January 7 and 8, 1998, was entitled to medical benefits for three days of his hospitalization, was entitled to total temporary disability benefits totaling $120.29, and that Hoskins was not entitled to attorney fees.

The Commission elected not to accept the majority of Powers' conclusions. The Commissioners adopted the following conclusions,

with one of the Commissioners not signing on to the order:

1. Hoskins suffered a personal injury as result of an accident arising out of and in the course of employment on January 7 and 8, 1998;
2. Hoskins was entitled to reasonable and necessary medical care from January 9, 1998 through April 7, 1999;
3. Hoskins was entitled to temporary disability benefits in the sum of $18,362.74;
4. Hoskins was not entitled to permanent partial impairment;
5. Hoskins was not entitled to disability above and beyond impairment;
6. The complaint against the Industrial Special Indemnity Fund should be dismissed;
7. Hoskins was not entitled to retraining benefits; and
8. Hoskins was entitled to attorney fees due to Circle A's unreasonable denial of benefits through May 3, 1999.

Circle A has appealed and Hoskins has cross-appealed. Although there is evidence throughout the record that metal fume fever, by itself, generally only lasts for 2–4 days, Circle A does not contend that Hoskins should not be awarded any benefits. Circle A concedes that there is substantial and competent evidence to support a finding that Hoskins was temporarily totally disabled until October 14, 1998, when Dr. Fullmer indicated that Hoskins' breathing had returned to pre-injury baseline status. Circle A disputes only the award of total temporary disability benefits and medical benefits from October 14, 1998 to April 7, 1999. Circle A contends that the only evidence in the record that Hoskins was disabled was the fact that he was still taking the supplemental oxygen therapy, and that this, by itself, is insufficient to establish disability.

## II.

### STANDARD OF REVIEW

■ This Court will uphold the factual findings of the Industrial Commission if those findings are supported by substantial and competent evidence in the record. *Rivas v. K.C. Logging,* 134 Idaho 603, 7 P.3d 212 (2000). Substantial evidence is "relevant evidence as a reasonable mind might accept to support a conclusion; it is more than a scintilla, but less than a preponderance." *Evans v. Hara's, Inc.,* 123 Idaho 473, 478, 849 P.2d 934, 939 (1993) (citing *Kinney v. Tupperware Co.,* 117 Idaho 765, 769, 792 P.2d 330, 334 (1990)). This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Rivas,* 134 Idaho at 607, 7 P.3d at 216. All facts and references are reviewed in the light most favorable to the party that prevailed before the Industrial Commission. *Id.*

## III.

### SUBSTANTIAL AND COMPETENT MEDICAL EVIDENCE SUPPORTS THE INDUSTRIAL COMMISSION'S FINDINGS THAT HOSKINS WAS COMPLETELY DISABLED FROM JANUARY 9, 1998, THROUGH APRIL 7, 1999.

■ There is medical evidence that metal fume fever is a condition that lasts only for a period of days. Circle A admits that there is substantial and competent evidence of record to support a disability finding up to October 14, 1998, when Hoskins had returned to pre-injury baseline status. Circle A has paid Hoskins for this period. Circle A, has, therefore, admitted that there is evidence to support a finding that some of Hoskins' problems that extended beyond his initial exposure to the fumes could be due to metal fume fever. The issue is whether substantial and competent evidence supports a finding that benefits should last until April 7, 1999.

The Commission stated:

Dr. Fullmer opined Claimant was completely disabled from the time of the hospital admission to the time it took for Claimant's pulmonary functions and oxygen levels to improve. He estimated this time at six to eight months. The Commission finds, however, Claimant was on oxygen therapy until April 7, 1999, and there-

fore had not returned to his pre-injury status until this date.

The October 14, 1998, date that Circle A focuses on is a date when Hoskins had a routine follow up exam at Dr. Fullmer's office. This report states: "**LABORATORY DATA:** Spirometry was performed prior to the appointment. Spirometry demonstrates moderate obstruction with an FEV1 or 2.3 liters 59% of predicated. There is significant improvement following the inhaled bronchodilator." A 1993 spirometry test revealed that Hoskins had a 2.2 meter capacity, which was 57% of normal. In his first deposition, Dr. Fullmer stated that the October test "would indicate stability." Circle A contends that these reports demonstrate that Hoskins' breathing had stabilized by October 1998.

Dr. Fullmer testified that metal fume fever "caused acute problems that caused significant worsening in his symptoms for a period of six to eight months," and stated that "[Hoskins'] pulmonary functions in late 1998 have not changed significantly from the pulmonary functions in 1993." There is evidence from Dr. Bardana that metal fume fever should only last several days and that Hoskins was disabled until October 14, 1998. Circle A contends that the Commission substituted its medical opinion in place of the medical evidence.

■■ Medical opinions are not binding on the commission. *Soto v. Simplot,* 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). They may be persuasive, but they do not need to be accepted. *Id.* The Commission's findings need only be supported by substantial competent evidence. *Id.* Dr. Fullmer kept Hoskins on the oxygen therapy after the October 14, 1998 appointment. Hoskins remained on oxygen therapy until April 7, 1999. He was not on oxygen therapy before the accident in question. Hoskins could not work while he was on the oxygen therapy. Dr. Fullmer also wrote a letter to the Union Security Life Insurance Company that stated that he felt Hoskins was disabled from January, 1998 to August 26, 1999. While the Commission did not accept the August, 1999, date, this is evidence that Dr. Fullmer considered Hoskins to be disabled beyond October 14, 1998.

There is evidence that Hoskins had returned to his pre-accident status by October 14, 1998 but there is also evidence that Hoskins was on oxygen treatment until April 7, 1999, and that Dr. Fullmer told Union Security Life Insurance Company that he considered Hoskins disabled until August 26, 1999. In short, there is conflicting evidence as to when Hoskins' disability ended. However, the evidence that Hoskins remained on oxygen therapy and that he could not work while on the therapy is substantial competent evidence to support the decision of the Commission.

### IV.

### SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE FINDING THAT CIRCLE A WAS UNREASONABLE IN DENYING BENEFITS REQUESTED BY HOSKINS, ENTITLING HOSKINS TO ATTORNEY FEES FOR PROCEEDINGS BEFORE THE COMMISSION

■ Circle A disputes the award of attorney fees by the Commission to Hoskins, arguing that the denial of benefits was not unreasonable. Circle A points to the evidence that metal fume fever usually only lasts 2–4 days, and, therefore, it was not unreasonable for Circle A to conclude that Hoskins' breathing problems stemmed more from his pre-existing conditions than his exposure to fumes. Further, the initial referee denied attorney fees, and one of the Commissioners did not sign on to the order. This, according to Circle A, demonstrates that reasonable minds could disagree on whether Hoskins should receive benefits.

Attorney fees are governed by Idaho Code § 72–804:

If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the in-

jured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

The key to this section is that there can be no reasonable grounds for the denial of benefits. Although Circle A suggests that this issue involves a question of law, this Court has stated that "[t]he decision that grounds exist for awarding a claimant attorney fees is a factual determination which rests with the Industrial Commission." *Hoye v. DAW Forest Products, Inc.*, 125 Idaho 582, 587, 873 P.2d 836, 841 (1994) (quoting *Trapp v. Sagle Volunteer Fire Dept.*, 122 Idaho 655, 656–57, 837 P.2d 781, 782–83 (1992)).

Supporting the decision of the Commission are the facts that Hoskins was exposed to fumes and that these fumes caused, at least in part, his respiratory distress. Referee Powers did not award attorney fees in his proposed order, but he did award three days worth of medical benefits and $120.29 of total temporary disability benefits. Circle A's expert, Dr. Bardana, acknowledged that metal fume fever would last several days. Several of Hoskins' coworkers suffered metal fume fever during the same period as Hoskins. The Commission determined that it was unreasonable to deny benefits and this is supported by substantial competent evidence.

## V.

### THE COMMISSION PROPERLY DETERMINED THAT HOSKINS' EARNINGS FROM PRO–WEST WELDING SHOULD NOT BE INCLUDED IN THE COMPUTATION OF BENEFITS DUE FOR TOTAL TEMPORARY DISABILITY BENEFITS

Idaho Code § 72–419(9) provides that when an employee is working under concurrent contracts with two employers, wages from both employers shall be considered. Hoskins had a side business, Pro West Welding, and, according to Hoskins, the Commission should have included his earnings from Pro West in calculating his total temporary disability benefits.

Circle A responds that Hoskins' outside business was a partnership, and Hoskins was a working member of that partnership. Consequently, Hoskins was not an employee of Pro West for purposes of I.C. § 72–419(9).

Idaho Code § 72–419(9) states in relevant part that:

> When the employee is working under concurrent contracts with two (2) or more employers and the defendant employer has knowledge of such employment prior to the injury, the employee's wages from all such employers shall be considered as if earned from the employer liable for compensation.

Circle A knew that Hoskins had a side business, called Pro Welding, and John Bernstrauch testified that he had a side business with Hoskins. Hoskins testified that because of his injury, he could not work for Pro Welding.

It is clear that Bernstrauch and Hoskins were partners in Pro Welding. Hoskins testified that he and Bernstrauch split profits "50/50" and filled out tax forms for partnerships. The question is whether a partner in a partnership can be an "employee" of the partnership for purposes of I.C. § 72–804. I.C. § 72–212 states that:

> None of the provisions of this law shall apply to the following . . .
>
> . . .
>
> (7) Employment as the owner of a sole proprietorship; *employment of a working member of a partnership* or a limited liability company. . . .

I.C. § 72–212(7) (emphasis added).

"Employee" is also defined by Idaho Code Section 72–102(11):

> "Employee" is synonymous with "workman" and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer. *It does not*

*include any person engaged in any of the excepted employments enumerated in § 72–212*, Idaho Code, unless an election as provided in § 72–213, Idaho Code, has been filed.

I.C. § 72–102(11) (emphasis added).

▪ It is clear that under I.C. § 72–212 a working member of a partnership is not covered under the law. Further, I.C. § 72–102(11) states that an employee does not include the excepted employments in I.C § 72–212. Idaho Code Section 72–212 excepts working members of a partnership. Therefore, a working member of a partnership is not an "employee" under I.C. § 72–419(9). The Commission did not err by excluding Hoskins' earnings from Pro West Welding in calculating his TTD benefits.

## VI.

### THE COURT CANNOT DETERMINE THE BASIS UPON WHICH THE COMMISSION DETERMINED THAT STRAIGHT TIME EARNINGS FOR HOURS GREATER THAN FORTY HOURS PER WEEK DURING THE HIGHEST 13–WEEK QUARTER IN THE YEAR PRIOR TO THE ACCIDENT SHOULD NOT BE USED TO CALCULATE HOSKINS' TOTAL TEMPORARY DISABILITY BENEFITS

▪ Hoskins argues that I.C. § 72–419(4)(a) is intended to give the claimant the wages he earned during the highest paying quarter year of employment. Circle A and Hoskins agree that his wage was $10.50 per hour. During his most productive quarter, Hoskins averaged 53 hours per week, and this is the quarter that the Commission should have used to determine his wage, according to Hoskins.

This issue involves the application of Idaho Code § 72–419(4)(a), which states that:

If at such time the wages are fixed by the day, hour, or by the output of the employee, the average weekly wage shall be the wage most favorable to the employee computed by dividing by thirteen (13) his wages (*not including overtime or premium pay*) earned in the employ of the employer in the first, second, third or fourth period of thirteen (13) consecutive calendar weeks in the fifty-two (52) weeks immediately preceding the time of accident or manifestation of the disease.

(emphasis added).

This statute "calculates an employee's weekly wage rate by splitting into four thirteen week periods the employee's wages earned in the fifty-two weeks previous to the injury. The wage period that is most favorable to the employee is then used in computing the employee's benefits." *Drake v. State, Indus. Special Indem. Fund*, 128 Idaho 880, 882, 920 P.2d 397, 399 (1996). Hoskins argues that a straight time rate for hours exceeding forty per week should have been included in the TTD determination, that during the most favorable quarter, he averaged fifty-three hours a week. Therefore, he should get his $10.50 per hour wage multiplied by fifty-three hours per week.

The parties agreed as to what Hoskins' hourly wage was. The Commission multiplied Hoskins' wages by forty to arrive at an average weekly wage. The Court cannot tell the basis of this decision—that is whether the Commission determined that I.C. § 72–419(4)(a) by its terms excluded consideration of the time in excess of forty hours or did not find that the evidence supported the claim for time in excess of a forty hour week. This portion of the decision must be remanded for clarification of the Commission's decision.

## VII.

### HOSKINS IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL

▪ Hoskins argues that Circle A is merely asking the Court to reweigh evidence submitted to the Commission and that, consequently, he is entitled to attorney fees. Circle A responds that the appeal is not frivolous on the basis that the initial referee who heard the case determined that Hoskins was not entitled to TTD's or medical benefits or attorney fees. Further, according to Circle A, there is no evidence to support the Commission's findings.

"Attorney fees and costs are properly awarded when an appeal asks this Court to do nothing more than reweigh the evidence submitted to the Commission." *Duncan v. Navajo Trucking*, 134 Idaho 202, 204, 998 P.2d 1115, 1117 (2000). Attorney fees and costs may be awarded pursuant to I.C. § 72–804. *Id.* Arguably, Circle A's appeal only asks the Court to reexamine the evidence relied on by the Commission. However, Hoskins has only prevailed in part in this appeal. He cross-appealed, and Circle A has prevailed on the cross-appeal. Both parties prevailed in part. Under these circumstances, Hoskins is not entitled to attorney fees.

## VIII.

## CONCLUSION

The decision of the Industrial Commission is affirmed in part and remanded in part as set forth in part VI of this opinion. Both parties prevailed in part. Neither party is awarded costs or attorney fees.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.